(Nos. 46537, 46538 cons.—

THE CITY OF CHICAGO, Appellee, v. THE POLLUTION CONTROL BOARD *et al.,* Appellants.

*Opinion filed Nov. 27, 1974.—Rehearing denied Jan. 28, 1975.*

William J. Scott, Attorney General, of Springfield (Richard W. Cosby and Michael A. Benedetto, Jr., Assistant Attorneys General, both of Chicago, of counsel), for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale, Edmund Hatfield, Henry F. Weber, and Lee Schwartz, Assistants Corporation Counsel, of counsel), for appellee.

Wallace H. Johnson, Assistant Attorney General, of Washington, D.C., James R. Thompson, United States

Attorney, and David R. Sturges, Assistant to the United States Attorney, both of Chicago, and Edmund B. Clark and Lawrence E. Shearer, of the Department of Justice, of Washington, D.C., for *amicus curiae* the United States of America.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a consolidated appeal from two orders of the circuit court of Cook County enjoining the Illinois Pollution Control Board and the Illinois Environmental Protection Agency (EPA) from enforcing certain sections of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*), and certain rules and regulations adopted pursuant to the Act, against the City of Chicago in the operation of a sanitary landfill and three incinerators used for the disposal of garbage and refuse. Permits for the operation of these facilities had been granted by the Chicago Department of Environmental Control. The appeals were transferred to this court pursuant to Rule 302(b). 50 Ill.2d R. 302(b).

Four complaints were filed by the EPA against the City of Chicago before the Pollution Control Board. The first of these, filed on May 23, 1973, alleged that the City was operating a refuse disposal, known as the Stearns Quarry, in violation of sections 21(a), (b), (e) and (f) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1021(a), (b), (e) and (f)) and Rules 3.04, 4.03, 5.06, and 5.07(a) of the "Rules and Regulations for Refuse Disposal Sites and Facilities." Before a hearing on this complaint could be held the City initiated an action in the circuit court of Cook County to enjoin the Board from hearing the case. The City alleged that as a home-rule unit under section 6 of article VII of the 1970 Constitution it was not subject to the provisions of the Environmental Protection Act. In the other three complaints the EPA alleged that three incinerators operated by the City were in

violation of sections 9(a) and (b) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1009(a) and (b)), Rule 3—3.232 of the "Rules and Regulations Governing the Control of Air Pollution," and Rule 103(b)(2) of the Board's "Air Pollution Control Regulations." The City also filed an action to temporarily enjoin further proceedings on these complaints. In both cases the circuit court granted preliminary injunctions, and subsequently granted permanent injunctions.

It is the contention of the City that its municipal disposal sites and incinerators are not subject to the provisions of the Environmental Protection Act because (1) the City is a home-rule unit under article VII of the Constitution, (2) the collection and disposal of garbage and waste is a governmental function within its home-rule powers and (3) the General Assembly has not acted pursuant to article VII to restrict the City's exercise of these home-rule powers. The City has not challenged the applicability of the Environmental Protection Act to nonmunicipal entities within the City. It is only the City's municipal operations which are claimed to be exempt from the Act.

Defendants, the Pollution Control Board and the Environmental Protection Agency, argue that the Environmental Protection Act and regulations enacted pursuant thereto apply to local governmental bodies, and that the State has the exclusive authority in the area of environmental protection and pollution control. They contend that section 1 of article XI of the Constitution vests exclusive legislative authority in these areas in the General Assembly and limits the home-rule powers granted by article VII. They also argue that environmental and pollution matters do not pertain to the "government and affairs" (see Ill. Const. (1970), art. VII, sec. 6(a)) of home-rule units, and that the State has preempted this area in the Environmental Protection Act. If home-rule units do have authority to act in these areas, the defendants argue

that the State has concurrent authority. The defendants also argue that the judgment below should be reversed because the City has failed to exhaust its administrative remedies.

We first consider the threshold question of whether the City was required to exhaust its administrative remedies before seeking injunctive relief. The Environmental Protection Act provides for a hearing on the merits of any complaint issued by the EPA. Parties to the hearing may obtain judicial review pursuant to the provisions of the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 111½, par. 1041; ch. 110, par. 264 *et seq.*) Defendants argue that were this procedure followed the City might prevail before the Board or on administrative review. The City answers that since the question of whether its functions are subject to the provisions of the Act is a legal one, the doctrine of exhaustion is inapplicable. We believe that where, as here, there is a dispute between the State and a home-rule unit as to jurisdiction, and a determination of the issue requires a construction of our constitution and statutes enacted implementing its provisions, there is no requirement that administrative remedies be exhausted.

As to the merits of this controversy it appears to be unnecessary to engage all of the contentions that have been raised on this appeal. The following presentation adequately presents the issues.

We shall first consider the defendants' argument that section 1 of article XI of the 1970 Constitution vests exclusive authority in the General Assembly to enact environmental legislation. Section 1 of article XI states:

> "SECTION 1. PUBLIC POLICY—LEGISLATIVE RESPONSIBILITY.
>
> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy."

The report of the General Government Committee of the constitutional convention on the environmental article left no doubt that it was the intention of that committee that the General Assembly must provide the leadership in the fight against environmental pollution. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 696-709, hereafter referred to as Proceedings.) However, the report does not indicate the exclusivity of State authority in this field for which the defendant contends. The committee report, in discussing this subject, states:

> "The use of the word 'State' is meant to include political subdivisions of the State. This raises the question of duplication of efforts by the State and its local governments. It is intended that the issue be left to the General Assembly for resolution. The duplication of efforts problem will be discussed further under Section 2." 6 Proceedings 698.

Under section 2 of the report the committee states:

> "There are myriad problems which must be overcome in this effort to preserve our environment. Not least among these is the problem of duplication of efforts. It is essential to the cause that the inter and intra governmental efforts complement one another, that there be a coordinated plan of action with uniform standards. \* \* \*
>
> This is the kind of problem the General Assembly is best suited to resolve. It is the Committee's intention in recommending this Section \* \* \* that the Legislature play a leadership role in the efforts to solve this problem as well as the entire realm of problems presented by environmental pollution." 6 Proceedings 700.

Thus it would appear that although the committee intended that the General Assembly should provide the leadership and establish uniform standards with regard to pollution control it was not the intention of the committee that the local government units be prohibited from acting in this field. It was instead the intention of the committee that under the leadership of the General Assembly the intergovernmental efforts complement one another.

This conclusion also appears to be in accord with the opinion of the Local Government Committee as stated in its report. In discussing exclusive and nonexclusive exercises of State power the committee stated:

"Control of air and water pollution, flood plains and sewage treatment are often cited as important examples of areas requiring regional or statewide standards and control.

At the same time, it is quite conceivable that both the state and various local governments can regulate the same activities and carry on the same or related functions without conflict or difficulty." 7 Proceedings 1642-1643.

The committee further indicated (7 Proceedings 1643) that the proposal makes clear that if the State legislates but does not express exclusivity, local governmental units retain the power to act concurrently, subject to limitations provided by law.

The State has legislated in this field by the adoption of the Environmental Protection Act, which did not express the intent that the State should exclusively occupy this field, but rather provided in section 2(a)(iv) (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv)) that it is the obligation of the State Government "to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act." We conclude therefore that a local governmental unit may legislate concurrently with the General Assembly on environmental control. However, as expressed by that portion of the constitutional proceedings referred to above, such legislation by a local governmental unit must conform with the minimum standards established by the legislature.

Section 9 of the transition schedule of the 1970 Constitution provides:

"All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they shall expire

by their own limitation or shall be altered or repealed pursuant to this Constitution."

Our analysis of the constitutional proceedings compels us to conclude that the provisions of the Environmental Protection Act, and the rules and regulations adopted pursuant thereto, are not inconsistent with the provisions of the Constitution and the clear intention expressed by the constitutional convention concerning the area of environmental protection. Pursuant to section 9 of the transition schedule, they therefore remain in effect and are binding upon local governmental units. See *City of Waukegan v. Pollution Control Board,* 57 Ill.2d 170, 184.

It logically follows from the above presentation that there is nothing in the Constitution or in the Environmental Protection Act to insulate the City of Chicago from the application of the Act. This statute prohibits any *person* from doing the proscribed acts. (Ill. Rev. Stat. 1973, ch. 111½, par. 1009.) The Act defines person as including any political subdivision or State agency. (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(i).) Although the collection and disposal of garbage is a governmental function to be performed by the City, in exercising that function the City of Chicago must comply with the Environmental Protection Act and the rules adopted pursuant thereto. Without such an interpretation of the Constitution and the Act it would be difficult if not impossible for the General Assembly to perform the mandate of maintaining a healthful environment imposed upon it by article XI of the 1970 Constitution.

For the reasons stated, the judgments of the circuit court of Cook County are reversed.

*Judgments reversed.*