THE CITY OF DES PLAINES, Plaintiff-Appellee, *v.* CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Defendant-Appellant.

(No. 60924;

First District (4th Division)—July 9, 1975.

James P. Daley and Thomas E. Greenland, both of Chicago, for appellant.

Di Leonardi & O'Brien, Ltd., of Des Plaines (Robert J. Di Leonardi, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Chicago and North Western Railway Company (hereinafter North Western), appeals from a judgment of the circuit court, sitting without a jury, finding it guilty of 18 violations of the City of Des Plaines noise-control ordinance.

The defendant contends that (1) the city ordinance is in direct conflict with the Illinois Pollution Control Board Noise Regulations, and is therefore preempted by same and unenforceable; and, alternatively, if the city ordinance is enforceable, that (2) the section which the defendant was found to have violated does not prohibit the noise which formed the basis of the prosecution; and (3) the noise measurements taken by the city could not establish a violation under the language of the ordinance.

The uncontradicted statement of facts in the defendant's brief indicates that the defendant North Western operates a suburban commuter rail service in the Chicago metropolitan area, which services approximately 100,000 passengers each day. In connection with this rail operation, North Western maintains a fleet of diesel locomotives and passenger cars which are stored in various rail yards throughout the metropolitan area. One such rail yard is the Des Plaines Coach Yard in Des Plaines, Illinois, where 4 diesel locomotives and approximately 19 cars are stored each weekday night. These locomotives and coaches make up four suburban commuter trains, each of which has its first stop each morning and its final stop each evening in Des Plaines. The trains leave the yard beginning at approximately 6:40 a.m. and return in the evening after 5 p.m.

Prior to the time the trains depart from the Des Plaines Coach Yard, the locomotive engines are started, or in some cases the engines are permitted to run at idle overnight.

On March 11, 1974, the City of Des Plaines served complaints on North Western alleging 27 violations of its Control of Unwarranted Noises Ordinance on 14 days during the month of November 1973. The complaints in each case charged a violation of section 10 of the ordinance (section 8—13—10 of the City Code of Des Plaines) for the generation of noise by four commuter locomotive engines. Prior to trial North Western moved to dismiss the complaints, and the motion was denied. North Western was thereafter found guilty by the court of 18 of the 27 charges and was fined $500 and costs. It then perfected its appeal to this court.

We are first confronted with the contention by North Western that the action of the Illinois Pollution Control Board in adopting noise regulations preempted the City of Des Plaines from exercising its constitutional home-rule powers (Ill. Const. (1970), art. VII, § 6) in the same area. In discussing this contention it would do well to supply some additional facts.

The Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*) was enacted by the Illinois General Assembly with an effective date of July 1, 1970. It recites in section 2, *inter alia:*

"(a) The General Assembly finds:

    *   *   *

(iv) that it is the obligation of the State Government * * * to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act; * * *." (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv).)

It further provides that:

"(b) It is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, * * *." (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(b).)

In section 25 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1025), the Illinois Pollution Control Board was vested with the authority to adopt regulations prescribing limitations on noise emissions. Ill. Rev. Stat. 1973, ch. 111½, par. 1025.

Subsequent to enactment of the Environmental Protection Act, the 1970 Illinois Constitution became effective, on July 1, 1971. It vests "home rule units" with broad authority to:

"exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. (1970) art. VII, § 6(a).)

It also describes the manner and circumstances in which these powers may be limited by the Illinois General Assembly. Subsections (g), (h), and (i) of section 6, article VII, provide:

"(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (1) of this section.

(h) The General Assembly may provide specifically by law for

the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (1) of this Section.

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

After the effective date of the 1970 Constitution, the City of Des Plaines enacted the noise-control ordinance, under which North Western was prosecuted, to take effect on October 16, 1972.

Thereafter, on July 26, 1973, the Pollution Control Board, pursuant to its authority under the above-mentioned section 25 of the Environmental Protection Act, adopted noise regulations. (Illinios Pollution Control Board Rules and Regulations, chapter 8). These regulations include limits on noise emissions from railroad switching and marshaling yards, railroad terminals, and railroad equipment and maintenance. (Illinois Pollution Control Board Rules and Regulations, chapter 8, part 2, Rule 201(c); Appendix A, SLUCM Codes 4112, 4113, 4114, 4115, 4116, 4119.) They also provided owners and operators of existing noise-emission sources a minimum 12-month grace period from the effective date of the regulations to effect compliance with the new standards and limitations on noise. Chapter 8, part 2, Rule 209.

North Western urges that the action of the Pollution Control Board in adopting noise regulations pursuant to authority granted by the Environmental Protection Act amounts to an expression, under the terms of section 6(h) of article VII of the 1970 Constitution set out above, that the State have the "exclusive" power to regulate noise pollution, and that therefore the city ordinance is preempted and unenforceable.

■■ The recent opinion of the Illinois Supreme Court in *City of Chicago v. Pollution Control Board*, 59 Ill.2d 484, 322 N.E.2d 11, which contains a discussion of the problem of state vs. local action in regard to pollution matters, appears to us, however, to effectively counter the validity of North Western's argument. There the City of Chicago contended that the provisions of the Environmental Protection Act did not apply to its operation of municipal refuse disposal sites and incinerators because such an operation was a governmental function within its home-rule powers under section 6 of article VII of the 1970 Illinois Constitution, and because the General Assembly had not acted pursuant to article VII to restrict the city's exercise of those powers. The Pollution Control Board countered with an argument analogous to that made by North Western in the case before us—that the State of Illinois has preempted the area

of environmental and pollution matters with enactment of the Environmental Protection Act. In rejecting this latter argument, the court first discussed the report of the General Government Committee of the constitutional convention on the environmental article (Ill. Const. (1970) art. XI), and concluded that although it was the intention of the committee "that the General Assembly should provide the leadership and establish uniform standards with regard to pollution control it was not the intention of the committee that the local government units be prohibited from acting in this field. It was instead the intention of the committee under the leadership of the General Assembly the intergovernmental efforts complement one another." (59 Ill.2d 484, 488, 322 N.E.2d 11, 14.) The court further noted the opinion of the Local Government Committee in its report that the local governmental units retain the power to act concurrently if the State legislates but does not express exclusivity. (59 Ill.2d 484, 489, 322 N.E.2d 11, 14.) The court then stated:

"The State has legislated in this field by the adoption of the Environmental Protection Act, which did not express the intent that the State should exclusively occupy this field, but rather provided in section 2(a)(iv) (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv)) that it is the obligation of the State Government 'to encourage and assist local governments to adopt and implement environmental-protection programs ·consistent with this Act.' We conclude therefore that a local governmental unit may legislate concurrently with the General Assembly on environmental control. However, as expressed by that portion of the constitutional proceedings referred to above, such legislation by a local governmental unit must conform with the minimum standards established by the legislature." 59 Ill.2d 484, 489, 322 N.E.2d 11, 14-15.

We find, in accordance with the reasoning above, that the City of Des Plaines was not preempted by enactment of the Environmental Protection Act, or by the Pollution Control Board regulations adopted pursuant thereto, in the area of noise pollution.

The defendant North Western directs our attention to *O'Connor v. City of Rockford*, 52 Ill.2d 360, 288 N.E.2d 432. There the Illinois Supreme Court had earlier held that the Environmental Protection Act, by granting authority to the Environmental Protection Agency to issue permits for sanitary landfill sites, precluded Winnebago County from also regulating a proposed landfill site to be used by the City of Rockford. In that case, we feel different considerations were present based on different facts. Initially we note that no assertion of home-rule powers by the city or county in that case is apparent, and the court nowhere considered the subject. Moreover, the case involves direct regulation of landfill sites

through the issuance of permits. We deem it appropriate to apply to the facts of the case at bar the clear language of the Illinois Supreme Court in *City of Chicago v. Pollution Control Board* in regard to the propriety of concurrent efforts by the State and local home-rule units in the area of pollution control, and we view the preemption implied in *O'Connor* as being limited to the facts and the subject matter involved in that case. See also *Carlson v. Village of Worth*, 25 Ill.App.3d 315, 322 N.E.2d 852.

North Western points out that, even if a State law such as the Environmental Protection Act does not express "exclusivity" *in haec verba* by a specific declaration in the statute, such exclusivity may still be manifest in other ways, such as by the enactment of a comprehensive state-wide regulatory scheme. (See *Chugach Electric Association v. City of Anchorage* (1970), 476 P.2d 115.) That might perhaps be true, but we do not feel that the Environmental Protection Act, under which the noise-pollution regulations were promulgated, intended exclusivity in the area of pollution. As discussed above, although the Act's expressed purpose is "to establish a unified, state-wide program * * * to restore, protect and enhance the quality of the environment" (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(b)), the Act also expressly indicates, as noted in the *City of Chicago* case, that "it is the obligation of the State Government * * * to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act." (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv).) We, therefore, again express agreement with the conclusion of the Illinois Supreme Court in *City of Chicago* that "a local governmental unit may legislate concurrently with the General Assembly on environmental control." (59 Ill.2d 484, 489, 322 N.E.2d 11, 14-15.) We also concur, however, that "such legislation by a local governmental unit must conform with the minimum standards established by the legislature" (59 Ill.2d 484, 489, 322 N.E.2d 11, 15), and must be "consistent" with the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv)).

■■ In this latter regard, North Western argues that the Des Plaines ordinance is in "direct conflict" with the Board noise regulations because the Board granted a minimum 1-year grace period before enforcement of the regulations would begin, in order to allow industry time within which to effect compliance; whereas the City of Des Plaines was prosecuting violations of its ordinance during that same period. We do not view this as a conflict between the regulations and the ordinance as a result of which the ordinance must yield. Just as the city might presumably be allowed to provide for more stringent standards in regard to noise pollution than those contained in the regulations (*cf. Illinois Liquor Control Com. v. City of Joliet*, 26 Ill.App.3d 27, 324 N.E.2d 453), it should also be

allowed to choose to prosecute forthwith for violations instead of granting a grace period. Consistency with the ultimate purpose of the State statute and regulations—the protection of the environment—is surely not thereby destroyed.

The City of Des Plaines makes a further argument that home-rule cities have the authority to pass home-rule ordinances even if such ordinances conflict with statutes antedating the 1970 Constitution (see *Rozner v. Korshak*, 55 Ill.2d 430, 303 N.E.2d 389; *People ex rel. Hanrahan v. Beck*, 54 Ill.2d 561, 301 N.E.2d 281), and that the Environmental Protection Act is a statute antedating the 1970 Constitution. In view of our disposition of the case, we deem it unnecessary to pass on the merit of this argument, on the facts presented, at this time.

The defendant North Western's second contention on appeal is that the noise emitted from its diesel locomotives is not prohibited by the section of the Des Plaines Control of Unwarranted Noises Ordinance that it was found to have violated (City Code of Des Plaines, sec. 8—13—10).

North Western points our attention first to section 1 of the Control of Unwarranted Noises Ordinance (City Code of Des Plaines, sec. 8—13—1), which defines a motor vehicle as "any passenger vehicle, truck, truck-trailer, trailer or semi-trailer, *or locomotive* propelled or drawn by mechanical power." (Emphasis added.) Section 7 of the ordinance, entitled "Operation of Aircraft, Motor Vehicles" thereafter provides under subsection (B):

> "It shall be unlawful for any person to operate any motor of a motor vehicle of a weight in excess of four (4) tons (eight thousand (8,000) pounds) for a consecutive period longer than two (2) minutes while such vehicle is standing on private property and located within one hundred fifty feet (150') of property zoned and used for residential purposes except where such vehicle is standing within a completely enclosed structure. * * *." (City Code of Des Plaines, sec. 8—13—7(B).)

Another subsection of section 7 provides noise limits for "new" motor vehicles (sec. 8—13—7(C))[1] as defined therein, and for motor vehicles traveling where the posted speed limit is 35 miles per hour or less, and where it is over 35 miles per hour (sec. 8—13—7(D)).

It is contended by North Western that, since it was established at trial that the distance between its locomotives and "property zoned and used for residential purposes" was in excess of 150 feet, it was clearly not in violation of section 8—13—7(B). North Western then poses the question: "Can the City prosecute the defendant under Section 8—13—10

---

[1] Further references are to sections of the Des Plaines City Code.

\* \* \* when the defendant's operation conforms to the standard prescribed by Section 8—13—7?"

Section 8—13—10 provides in pertinent part:

> "SOUND LEVELS AT ZONING DISTRICTS: In any Manufacturing Zoning District, at no point on the boundary of a Residence, Business, or Commercial Zoning District shall the sound pressure level of any individual operation or plant, or the combined operations of any person, firm or corporation, exceed the decibel levels in the designated octave bands shown below for the Zoning Districts indicated as measured under test procedures established by Section 8—13—16 of this Chapter:

| Octave Band Center Frequency (Hz) | Residence | Maximum Sound Pressure Levels (dB) Along District Boundaries Business-Commercial |
|---|---|---|
| 31.5 | 72 | 79 |
| 63 | 71 | 78 |
| 125 | 65 | 72 |
| 250 | 57 | 64 |
| 500 | 51 | 58 |
| 1000 | 45 | 52 |
| 2000 | 39 | 46 |
| 4000 | 34 | 41 |
| 8000 | 32 | 39 |
| A-SCALE LEVELS (for monitoring purposes)." | 55 dB(A) | 62 dB(A) |

This section, North Western argues, is directed only at industrial noise from manufacturing plants and operations, and that only section 8—13—7 could be applied to its operation of the locomotives.

We disagree. An ordinance is to be construed in light of the surrounding circumstances and conditions under which it was enacted, as well as the purposes sought to be attained by it, in order to dispel doubtfulness or ambiguity in its meaning, and to determine and effect the expressed legislative intent. McQuillin, The Law of Municipal Corporations § 20.46 (3d ed. 1969).

■■ Section 8—13—10, as we read it, was clearly meant to prohibit noise emanating from property zoned for manufacturing beyond the levels set out in the section, as measured at the boundary line of the manufactur-

ing district and either a residential, business, or commercial district. The source of the noise, under the language of the section, can be from "any * * * operation *or* plant." (Emphasis added.) "Any operation" reasonably encompasses the operation of locomotives at rest, as here. The fact that North Western may have been liable under section 8—13—7 if its locomotives were within 150 feet of residentially zoned property, under the terms of that section, does not exonerate it from liability under 8—13—10 on the facts here.

North Western argues lastly that no evidence was introduced at trial establishing a violation of section 8—13—10, since the noise level was measured in a way which could not prove a violation of that section.

As indicated above, section 8—13—10 sets out a chart indicating the "Maximum Sound Pressure Levels (dB) Along District Boundaries" for various "Octave Band Center Frenquenc[ies] (Hz)." The final entry in the chart indicates maximum levels as determined on the "A-Scale." Philip Lindahl, the city's environmental officer, testified that he took readings on the A-scale at the appropriate district boundaries, and that they indicated that the engine noise from the locomotives was above the designated levels in that category.

North Western emphasizes the language in section 8—13—10 that the sound pressure level shall not exceed "the decibel levels in the designated octave bands" as indicated in that section, and also the parenthetical reference at the bottom of the chart "(for monitoring purposes)." It would have us construe the ordinance, based on the latter, to mean that only readings in the octave bands can be used to establish a violation, and that the A-scale readings are only meant for "monitoring purposes," as indicated in the parenthetical.

We disagree that the readings made do not establish a violation of the ordinance. The chart clearly sets up permissible sound levels as measured on the A-scale by the final entry in the chart. The parenthetical reference to "monitoring," which is nowhere defined in the ordinance and could well apply to the whole column of digits in the chart, does not dissipate the distinct indication that to exceed such levels would be a violation of the ordinance. Although the section may have been more artfully drawn, we feel it reasonably can be construed to mean, and sufficiently put North Western on notice that, sound levels on the A-scale above 55 dB(A) along residence district boundaries (or above 62 dB(A) along a business-commercial district) were prohibited. There is no dispute on appeal that North Western exceeded that level.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.