(No. 50499.—

THE COUNTY OF COOK, Appellant, v. JOHN SEXTON CONTRACTORS COMPANY *et al.,* Appellees.—(The Pollution Control Board *et al.,* Appellants.)

*Opinion filed April 18, 1979.—Rehearing denied May 30, 1979.*

498

500

UNDERWOOD, J., concurring.
RYAN, J., specially concurring.
GOLDENHERSH, C.J., and CLARK, J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and William E. Kenny, Assistant State's Attorney, of counsel), for appellant County of Cook.

William J. Scott, Attorney General, of Springfield (George Wm. Wolff, Assistant Attorney General, and Dennis R. Fields, Special Assistant Attorney General, of Chicago, of counsel), for appellant Pollution Control Board.

Marvin J. Glink and John B. Murphey, of Ancel, Glink, Diamond & Murphy, P.C., of Chicago, and Leland H. Ryson, of Tinley Park, for appellant Village of Richton Park.

Kirkland & Ellis, of Chicago (Frank L. Winter, of counsel), for appellees John Sexton Contractors Co. *et al.*

Kevin M. Forde, Ltd. and Richard J. Prendergast, of Chicago, for *amicus curiae* The Illinois Landfill Operators Association *et al.*

MR. JUSTICE MORAN delivered the opinion of the court:

This litigation arose out of the efforts of John Sexton Contractors Company (Sexton) to locate and operate a

sanitary landfill on an 85-acre tract of land in an unincorporated portion of Cook County (County). On January 19, 1976, the County comprehensively amended its zoning ordinance pursuant to its home rule power under the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6). Prior to the amendment, the subject property had been zoned R—3, single-family district. Under the amendment, the subject property was zoned R—4, single-family district. The present ordinance allows sanitary landfill sites as a special use in four districts zoned for industry and in two districts zoned for open land.

The Environmental Protection Agency (Agency) issued a final developmental permit to Sexton on September 13, 1976. (The Agency previously had issued a permit, but then requested additional information from Sexton.) The County subsequently brought an action in the circuit court against Sexton and the Agency, seeking to enjoin further development and operation of the landfill until Sexton complied with the County's zoning laws. Sexton counterclaimed to stop the County's attempt to subject the landfill to county zoning laws, alleging that the Environmental Protection Act (Act) (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) applied to the exclusion of the County's zoning laws.

Property used for residential purposes is located close to the subject landfill site and within the corporate limits of the village of Richton Park (Village). The Village filed a complaint with the Pollution Control Board (Board) pursuant to Rule 503(a) of the Board's Procedural Rules and Rule 205(j) of the Board's Solid Waste Rules and Regulations, which ostensibly empower the Board to review the actions of the Agency in the granting of permits. Sexton moved to dismiss the Village's complaint on the ground that the Board was without authority to review the Agency's decision in the granting of permits. The Board denied Sexton's motion.

Following this denial, Sexton amended its counterclaim to add the Board and the Village as counterdefendants and to enjoin the Board proceedings. Although the record is not clear, it seems Sexton further amended its counterclaim to add the village of Matteson and Cook County school districts 159 and 227 as additional counterdefendants. The Board moved to dismiss Sexton's amendments on the ground that the circuit court lacked jurisdiction to rule on the propriety of the proceedings before the Board. Meanwhile, Sexton had developed the landfill site, the Agency issued Sexton a permit to operate the landfill, and Sexton began operations. The court, after determining it had jurisdiction over the matter, denied the Board's motion to dismiss.

After deciding it had jurisdiction, the circuit court held Board Rules 503(a) and 205(j) invalid, on the ground that the Board was not delegated the authority to review the Agency's decision in the granting of permits. Consequently, the court enjoined further Board proceedings in the matter. The court further ruled that the Act preempted any regulatory authority by home rule units over the location of sanitary landfills and enjoined the County from interfering with Sexton's sanitary landfill operation. The County, the Board, and the Village separately appealed from the trial court's judgments. The case was transferred to this court pursuant to Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)).

The appeals taken by the Board and the Village both present the following questions: (1) Did the circuit court have jurisdiction to determine the validity of the Board rules? and (2) Are Board Rules 503(a) and 205(j) valid? Both of these questions have been decided adversely to the Board and the Village by this court's recent decision in *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541. Accordingly, we hold that the circuit court had jurisdiction to, and correctly did, decide

that Board Rules 503(a) and 205(j) are invalid. Proceedings before the Board therefore were properly enjoined.

The appeal of the County presents the remaining precise question: Where the Agency has issued a permit for the operation of a privately owned sanitary landfill, may the County, a home rule unit, require the landfill owner's conformance to the County's zoning ordinance?

Prior to July 1, 1970, anyone desirous of operating a sanitary landfill within the unincorporated area of a county was required to locate it upon land zoned for such purposes (Ill. Rev. Stat. 1969, ch. 34, pars. 3151 to 3162), and also to register the site with the Illinois Department of Public Health (Ill. Rev. Stat. 1969, ch. 111½, pars. 471 to 476), whose duties included the formulation of minimum standards for the operation of such facility.

On July 1, 1970, the act here involved became effective and repealed the statute requiring registration of sanitary landfills with the Illinois Department of Public Health (Ill. Rev. Stat. 1971, ch. 111½, par. 1050). In the Act, the General Assembly expressed its concern over environmental damage by declaring the need for a statewide program to cope with environmental problems, including the disposal of solid waste. (Ill. Rev. Stat. 1977, ch. 111½, pars. 1002(a)(ii), 1002(a)(iii).) The Act thus represents a unified program of environmental regulation. Sections 20 to 22 (Ill. Rev. Stat. 1977, ch. 111½, pars. 1020 to 1022) specifically address solid waste disposal, and include the proscription against refuse-disposal operations without an Agency permit (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(e)). Following adoption of the Act, the question of the power of a local governmental unit to subject a sanitary landfill to local zoning ordinances was first addressed by this court in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360. That action arose when the city of Rockford, after registering with the Illinois Department of Public Health, proposed to maintain and

operate a sanitary landfill in an unincorporated area of Winnebago County. The county sought to require the city's compliance with the county zoning laws. After discussing various provisions of the Act, this court held that the city need only obtain an Agency permit. The court felt that to condition the city's use of the proposed site as a sanitary landfill on its compliance with county zoning laws would contravene the "clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency." (52 Ill. 2d 360, 367.) On its face, *O'Connor* thus stands for the proposition that the Act operates to the exclusion of regulation by local governmental bodies. It must be noted, however, that the local governmental body (Winnebago County) involved in *O'Connor* was a non-home-rule unit.

The next confrontation between the Act and a local unit of government involved a home rule unit, the city of Chicago. In *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, the Agency sought to subject the city to the provisions of the Act in the city's operation of a municipal sanitary landfill and three refuse incinerators, after the city had been granted permits by the Chicago Department of Environmental Control. There, the court concluded that a local governmental unit may legislate concurrently with the State on environmental control. Although the local unit of government was a home rule unit, the court did not expressly confine its holding to home rule units, just as the *O'Connor* court did not confine its holding to non-home-rule units.

Following *City of Chicago*, another case arose which involved the authority of a local governmental unit over sanitary landfills. In *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, plaintiff had obtained an Agency permit to install and operate a sanitary landfill within the village of Worth, a non-home-rule unit. The village promptly enacted

an ordinance making it unlawful to operate the landfill without a permit from the village. The village permit, in turn, required compliance with the village zoning ordinance. This court held that the Act preempted local regulation, reiterating the policies of the Act as expressed by the legislature and set forth by *O'Connor* (62 Ill. 2d 406, 408-09). As in *O'Connor,* the court did not confine its holding to non-home-rule units. Consequently, rather than merely limiting *City of Chicago* to home rule units, the *Carlson* court, viewing *City of Chicago* as inconsistent with *O'Connor,* purported to reduce the *City of Chicago* decision to *dictum.* (62 Ill. 2d 406, 409.) The decision in *Carlson,* therefore, although concerned with non-home-rule units only, was viewed as casting doubt on the continued vitality of *City of Chicago* even as to home rule units. See *Carlson v. Village of Worth* (1976), 62 Ill. 2d 406, 411, 424-26 (Ryan, J., dissenting; Underwood, J., and Ward, C.J., dissenting from supplemental opinion on denial of rehearing); *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, 260 (stating that *Carlson* precludes reliance on *City of Chicago* as precedent).

After *O'Connor* and *Carlson,* it is clear that the Act operates to exclude non-home-rule units from the regulation of sanitary landfills. This conclusion, however, is not incompatible with the result reached in *City of Chicago,* which applied to home rule units. An assessment of the relationship between State legislation and regulations enacted by a local governmental unit requires a different approach when the local unit is a home rule unit. Under the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6), effective July 1, 1971, many local units of government became, or were given the power to become, home rule units, which were granted the following power:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining

to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, sec. 6(a).)

The Constitution also provides that "[p]owers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, sec. 6(m).) As to the State's relationship with home rule units, the State may exercise exclusively any power or function of a home rule unit except for taxing or certain taxing-type powers. (Ill. Const. 1970, art. VII, sec. 6(h).) However, section 6(i) of article VII provides:

"Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, sec. 6(i).

In deciding whether a home rule unit's zoning restrictions are applicable to sanitary landfills, we must first determine if, under the 1970 Constitution, zoning for sanitary landfills is a home rule power and a function "pertaining to its government and affairs." If so, we must decide whether the legislature, through enactment of the Act, has (1) "specifically" limited local exercise, or (2) "specifically" declared the State's exercise to be exclusive, thereby totally preempting a home rule unit's exercise of its constitutional power. If the legislature has not taken such "specific" action, we then must determine the proper relationship between the local zoning ordinance and the provisions of the Act.

The terms of the grant of home rule power are broad and imprecise, leaving to this court the duty to interpret whether any power exercised by a home rule unit is within the grant of section 6(a). (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 539-40.) The difficulty in determining the extent of home rule power arises because many

matters are of both local and regional or statewide concern. A prime example is environmental regulation. Few matters would seem to be of more local concern than controlling local sources of pollution. Yet, many areas of environmental regulation are also of regional or statewide concern, as many types of pollution and pollution-related matters transcend local boundaries. The problem is to decide which environmental matters are sufficiently local in character so as to be subject to the home rule power. It must be remembered that finding a matter to be within the home rule power does not preclude regulation or control by the State. The General Assembly may remove or limit most home rule powers by a three-fifths majority vote (Ill. Const. 1970, art. VII, sec. 6(g)), or may specifically supercede, either in part or in total, most home rule powers through its own legislation covering the particular matter (Ill. Const. 1970, art. VII, secs. 6(h), 6(i)). Absent such action by the General Assembly, home rule units may, concurrently with the State, exercise and perform any home rule powers. Ill. Const. 1970, art. VII, sec. 6(i).

Activities and matters that are potential sources of pollution, properly subject to environmental regulation, include the treatment and disposal of sewage and solid waste. In *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, this court considered whether a municipality's home rule power extends to regulation, in the form of a permit requirement, of a regional sewage-treatment plant. After the sanitary district obtained a permit from the Agency to construct a sewage-treatment plant within the city of Des Plaines, the city, a home rule unit, sought to force compliance with its own permit requirements. This court held that application of the city's ordinance to the plant does not pertain to its government and affairs. In so ruling, the court emphasized that the regional plant was designed to serve several home rule municipalities. "Our fundamental difficulty is that to

permit a regional district to be regulated by a part of that region is incompatible with the purpose for which it was created." (63 Ill. 2d 256, 261.) Thus, although the plant, a potential source of pollution, was to be located entirely within the city of Des Plaines, and any environmental problems would have their greatest impact at the source, the court felt that local regulation would interfere unduly with the greater interest of the regional district.

In our opinion, the holding in *Metropolitan Sanitary District* should not be extended to the instant set of facts. The court there did not invalidate the local ordinance; it merely prohibited its application to the sanitary district's regional plant. (63 Ill. 2d 256, 260.) The situation here is distinguishable. While Sexton admittedly contemplates use of the landfill by surrounding communities, this is not the case of a regional governmental district seeking to create a facility to serve a specific region, with a part of that region attempting to regulate the facility. Thus, the 'fundamental difficulty" that this court perceived in *Metropolitan Sanitary District* does not exist here.

Sexton emphasizes that the Act established a state-wide program of environmental regulation. The existence of the Act, however, is not determinative of whether regulation of sanitary landfills is within the home rule power. As stated, the Constitution specifically provides the legislature with the ability to deny, limit, or exclude home rule units from exercising most home rule powers. (Ill. Const. 1970, art. VII, secs. 6(g) to 6(i).) The late Professor David C. Baum, counsel to the Committee on Local Government, asserted that, unless the legislature undertakes its supervision powers according to the constitutionally prescribed methods, "home rule units are supposed to be free to carry on activities that relate to their communities even if the state also is interested and is active in the area." Baum, *A Tentative Survey of Illinois Home Rule (Part 1): Powers and Limitations,* 1972 U. Ill.

L.F. 137, 155.

We do not believe that it was the intent of the framers of the 1970 Constitution to exclude regulation of solid waste disposal from those matters that pertain to the government and affairs of home rule units. The Report of the Local Government Committee to the constitutional convention evidences the intent to include such regulation within the home rule power:

> "The fundamental reason for favoring home rule over the existing system of legislative supremacy is this: Local governments must be authorized to exercise broad powers and to undertake creative and extensive projects if they are to contribute effectively to solving the immense problems that have been created by the increasing urbanization of our society." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1605.)

Perusal of the transcripts of the constitutional debates regarding home rule indicates a similar intent on the part of the delegates. (See 4 Proceedings 3040, 3049, 3055, 3065, 3094, 3112, 3119-20.) Furthermore, this court, in *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166, acknowledged that "the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein." We adhere, therefore, to that portion of the decision in *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, which held, at least implicitly, that regulation of sanitary landfills is within the home rule power under section 6(a) of article VII of the 1970 Constitution.

Our determination, that regulation of sanitary landfills by the County through its zoning restrictions is within its home rule powers, is buttressed by the history of local regulation of such matters. The traditional zoning power of counties (see Ill. Rev. Stat. 1977, ch. 34, par. 3151 *et seq.*), the history of local zoning restriction of intensive land uses (see *Dube v. City of Chicago* (1955), 7 Ill. 2d 313), and this court's recognition of local concern over

garbage disposal (see *Montgomery v. City of Galva* (1969), 41 Ill. 2d 562, 564; *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401, 404; *Consumers Co. v. City of Chicago* (1924), 313 Ill. 408, 413-14) point to the conclusion that the County's zoning restrictions regarding sanitary landfills pertain to its government and affairs.

Sexton argues that this court's decision in *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, requires us to hold that a home rule unit may not regulate sanitary landfills. In *North Western Ry.*, which was decided after *Metropolitan Sanitary District*, the city of Des Plaines charged the defendant with violating the city's noise-control ordinance, based on the noise emanating from the defendant's trains as they sat idling overnight in a railyard in the city. The defendant was convicted under the ordinance and the appellate court affirmed. This court reversed. A careful reading of *North Western Ry.* discloses that the authority sought to be exercised under the noise-control ordinance, much like the authority sought to be exercised under the health ordinance at issue in *Metropolitan Sanitary District*, exceeded the city of Des Plaines' home rule power granted under section 6(a) of article VII (Ill. Const. 1970, art. VII, sec. 6(a)). In *North Western Ry.*, although the immediate facts dealt with noise emission within the city, the city admitted that the ordinance was intended to control emissions originating beyond its boundaries. In *Metropolitan Sanitary District*, the city attempted to impose its ordinance on six other municipalities which comprised the sanitary district. In each instance, the city was precluded from imposing its home rule power upon other local units of government. In the instant case, the County's zoning ordinance applies only to unincorporated land within the County's own boundaries.

Having determined that zoning of sanitary landfills is

within the home rule power, we must still decide whether the County can subject Sexton to its zoning restrictions after Sexton has received a permit for its landfill from the Agency. Sexton does not contend, and the record does not disclose, that the legislature has denied or limited by a three-fifths vote under section 6(g) of the Constitution the home rule power at issue here. This leaves the question whether, through the Act, the legislature has specifically excluded or limited, pursuant to sections 6(h) or 6(i), the home rule power. This court in *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 489, held that the Act did not express the intent that the State should exclusively occupy the field, but that a home rule unit may legislate concurrently with the General Assembly on environmental control. Although *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, made it clear that the Act preempted the power of non-home-rule units to regulate sanitary landfills, that decision involved a non-home-rule unit and should not be read to overrule *City of Chicago* with respect to home rule units.

As noted earlier, the Act became effective on July 1, 1970. The 1970 Constitution, however, did not become effective until July 1, 1971. This court has consistently held that for legislation to restrict the home rule power, the statute, besides complying with the constitutional requirements, must have been enacted subsequent to the adoption of the Constitution. Furthermore, a home rule unit's exercise of its power will supercede any conflicting pre-1970-Constitution legislation. (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 18; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527; *Paglini v. Police Board* (1975), 61 Ill. 2d 233, 235; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550; *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 147; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, 53-54;

*People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 565-66; *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166-67.) Because the Act antedated the effective date of the 1970 Constitution, home rule units, under the above-cited cases, retain the powers provided by section 6 of article VII. Ill. Const. 1970, art. VII, sec. 6.

In *City of Chicago,* however, this court modified the doctrine of home rule precedence in the area of environmental regulation because of the policy manifested in article XI of the Constitution, which states:

> "The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy." (Ill. Const. 1970, art. XI, sec. 1.)

The court, after citing various excerpts from the General Government and Local Government Committees' reports, found that the delegates to the convention intended that the General Assembly would provide leadership and uniform standards with regard to pollution control and then went on to state:

> "We conclude therefore that a local governmental unit may legislate concurrently with the General Assembly on environmental control. However, as expressed by that portion of the constitutional proceedings referred to above, such legislation by a local governmental unit must conform with the minimum standards established by the legislature." (59 Ill. 2d 484, 489.)

We modify a portion of the conclusion reached in *City of Chicago* by substituting the words "home rule" for the word "local," and the word "uniform" for the word "minimum" in the above-quoted portion of that opinion. Under this modification, as applied to environmental pollution, home rule governmental units are limited to

adopting only those uniform standards established by the Board pursuant to legislative authority. This comports with the intent of the delegates to the constitutional convention as expressed by the General Government Committee:

> "It is essential to the cause [to preserve our environment] that the inter and intra governmental efforts complement one another, that there be a coordinated plan of action with *uniform* standards." (Emphasis added.) (6 Proceedings 700.)

A similar intent was expressed by the Local Government Committee in addressing the solution to the problem of fragmenting governmental power when it proposed that the State be permitted "to take over or directly control those aspects of government in metropolitan areas which do not lend themselves well to governance by a large number of local units." (7 Proceedings 1615.) We conclude that the legislature has delegated solely to the Board the authority to adopt uniform statewide environmental standards, and that a home rule unit which passes a related ordinance, in the interest of local implementation and enforcement, must conform to those same standards.

In sum, while we adhere to this court's decisions in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, and *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, as far as non-home-rule units are concerned, we are of the opinion that *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, as modified, represents the law with respect to home rule units.

Sexton argues that to require compliance with local zoning restrictions would disrupt the statewide concern expressed by the legislature and the need for regulation of environmental matters on a statewide basis. We are not so persuaded. The framers of the Constitution were cognizant of potential problems but, nevertheless, opted to give home rule units broad grants of power subject to legislative

control. The Local Government Committee stated:

"As to the problem of fragmenting governmental power in metropolitan areas, we believe that the solution does not lie in denying suitable powers to local governments which only aggravates the problem of fragmentation, but *rather in encouraging the use of powers in a cooperative manner* by local entities in metropolitan areas \*\*\*." (Emphasis added.) 7 Proceedings 1615.

As earlier concluded, the County, a home rule unit, may, under its "government and affairs" authority, impose zoning restrictions. This power is not to be denied. The Act does not delegate zoning powers to the Agency or the Board but, in fact, limits such power. Section 22 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1022) empowers the Board to adopt *regulations* for the location of landfills but not to designate the actual site. Section 27(a) of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a)) restricts the Board by stating:

"In promulgating regulations under this Act, the Board shall take into account the *existing* physical conditions, the character of the area involved, including the character of surrounding land uses [and] zoning classifications \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a).

The power of the Board to set uniform, statewide environmental standards and the power of the County to zone property within its boundaries are therefore evidenced as distinct but concurrent powers that must be exercised cooperatively in the interest of environmental protection. To this end, the County, in zoning land for landfill sites, must adhere to the environmental regulations adopted by the Board, while the Agency, operating under the Board's regulations, must comply with the County's zoning ordinance when issuing permits for landfill sites. Thus, the authority granted the Board under the Act and the home rule authority granted to the County under the Constitution's article VII, section 6, can be exercised in

unison to accomplish the public policy expressed in article XI, section 1, of the 1970 Constitution.

We conclude that Sexton, who has complied with the regulations of the Board, must also comply with the zoning restrictions of the County.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part and the cause is remanded to that court with directions to enter an order in accordance with the views expressed herein.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*

MR. JUSTICE UNDERWOOD, concurring:

I am not as certain as my colleagues that *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, is so clearly distinguishable from this case. However, upon further consideration of the basic issue—whether and to what extent home rule units may legislate in environmental matters—I have concluded to join the opinion of the court.

Viewed against the background of the home rule issues reaching this court, the arguments of the late Professor David C. Baum, counsel to the constitutional convention's Local Government Committee, are persuasive. He stated that "the question is not whether the 'pertaining to ...' language should limit the home rule grant, but rather how extensive the limitation should be." (Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations,* 1972 U. Ill. L.F. 137, 153, hereinafter referred to as Baum (Part I).) The more troubling question, to me, is the extent to which this court should, by its interpretation of the "pertaining to" language, determine the degree of limitation in view of the optional methods for doing so granted the legislature in sections 6(g) and (h). (Ill. Const. 1970, art. VII, secs. 6(g),

(h).) Again, Professor Baum's articulate arguments for the latter are persuasive.

"The difficulty with a preemption rule in Illinois is that the home rule section, section 6, was specifically designed to prevent invalidation of local ordinances from occurring in this manner by judicial interpretation. Sections 6(g) and (h) permit the legislature to limit or deny home rule powers by a three-fifths vote of each house, and to exclude home rule units from a subject area by specifically declaring that the state shall operate exclusively in that area. Apart from these two methods of legislative supervision, home rule units are supposed to be free to carry on activities that relate to their communities even if the state also is interested and is active in the area. This idea is expressed in section 6(i), which provides that '[h]ome rule units may exercise and perform *concurrently with the State* any power or function of a home rule unit to the extent that the General Assembly by law does not *specifically* limit the concurrent exercise or *specifically* declare the State's exercise to be exclusive.' To the extent that state regulation is held to invalidate local power under the 'pertaining to . . .' language of section 6(a), the purpose of section 6(i) is undermined and defeated." (Emphasis in original.) Baum (Part I) at 154-55 (footnotes omitted).

Conceding that a flexible approach to the interpretation of section 6(a) had much to recommend it, Professor Baum continued:

"A flexible approach to the definition of those subjects that 'pertain' to the 'government and affairs' of home rule units might also help solve several difficult issues. *** Courts might subject home rule cities to the jurisdiction of the Pollution Control Board even though the General Assembly may fail to expressly require home rule units to comply with the board orders. Absent such a requirement passed pursuant to section 6(g) or 6(h), home rule cities might claim that pollution is their local concern, unless the courts rule that pollution is a matter of state concern outside of local 'government and affairs.' And finally, a flexible, court-determined definition of

'government and affairs' would be consistent with the treatment of home rule powers in other states.

But despite its many advantages, the flexible approach seems wrong. We should face squarely that section 6 grants broad powers to home rule units subject to restraints imposed primarily by the General Assembly either by a three-fifths vote or by a declaration of exclusive state jurisdiction under authority expressly reserved in sections 6(g) and 6(h). The language does not contemplate substantial restraint added by judicial interpretation; indeed, it was designed to make this interpretation difficult if not impossible. A judicial preemption doctrine based upon the existence of legislative regulation was specifically frowned upon.

The design of section 6 places great responsibility upon the legislature to ensure that home rule does not degenerate into provincialism which could injure the people of the state. This emphasis on legislative authority to limit home rule, plus the specification of ways in which the legislature must act to assert its authority, makes the Illinois home rule provision unique. Judicial limitations imposed on home rule in other states should not be very persuasive in Illinois because of our unique approach to the problem.

If the legislature does not perform its job, it is true that the people of the state may suffer. But that is, by and large, the fate mandated by section 6 of the Local Government Article. Certainly, the 'pertaining to . . .' language leaves some leeway for judicial intervention. But if the constitutional design is to be respected, the courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies." Baum (Part I) at 155-57 (footnotes omitted).

If we are to perform our duty to implement the constitutional design, responsibility for the intelligent control of home rule powers should, in the absence of substantially more compelling facts than are here present, be left where the Constitution placed it—with the General Assembly.

MR. JUSTICE RYAN, specially concurring:

Although I agree with the result reached by the majority, I cannot agree with the *dicta* contained in the opinion concerning the lack of authority of non-home-rule units of local government to regulate sanitary landfills. This case involves only the question of the authority of a home rule unit to regulate the location of landfills through the use of zoning power. There is no need to discuss in this case what authority a non-home-rule unit has in this area. To me, it seems inappropriate to attempt to transfuse vitality by the use of *dicta* into *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, a case I view as one of questionable precedential value. If this court, which is now differently composed than when *Village of Worth* was decided, wishes to again consider the issues that were before the court in that case, it should do so when those issues are involved in a case before the court and are properly briefed and argued. For the reasons stated, and under the authority cited in my dissent in *Village of Worth,* and my dissent from the supplemental opinion on rehearing in that case, I believe that non-home-rule units have been granted authority to regulate the disposal of garbage and waste, and the location of landfills, and that the authority granted by statute has never been modified or rescinded.

MR. CHIEF JUSTICE GOLDENHERSH, dissenting:

I dissent. To hold that a home rule unit may by its zoning ordinance nullify the decision of the Environmental Protection Agency concerning the location of a landfill effectively thwarts the declared legislative intent that those decisions be made in accordance with a unified statewide program for environmental protection. The General Assembly specifically found:

"(i) that environmental damage seriously endangers the public health and welfare ***;

(ii) that because environmental damage does not

respect political boundaries, it is necessary to establish a
unified state-wide program for environmental protection
and to cooperate fully with other States and with the
United States in protecting the environment;

(iii) that air, water, and other resource pollution,
public water supply, solid waste disposal, noise, and other
environmental problems are closely interrelated and must
be dealt with as a unified whole in order to safeguard the
environment." Ill. Rev. Stat. 1977, ch. 111½, pars.
1002(i), (ii), (iii).

In the implementation of its program the General
Assembly drew a clear distinction between the powers of
the Pollution Control Board applicable to particular
pollution problems. In section 10 of the Environmental
Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1010)
relevant to the control of air pollution and section 13 (Ill.
Rev. Stat. 1977, ch. 111½, par. 1013), which relates to
water pollution, the broad powers conferred upon the
Board for the adoption of regulations do not specifically
provide that it may promulgate standards for the location
of those facilities. In contrast, section 17 (Ill. Rev. Stat.
1977, ch. 111½, par. 1017), concerning public water
supply, and section 22 (Ill. Rev. Stat. 1977, ch. 111½, par.
1022), concerning land pollution and refuse disposal,
specifically confer upon the Board the power to adopt
regulations prescribing standards for the location of such
sites and facilities. Further, section 39 of the Act contains
a provision applicable only to refuse disposal facilities;
upon receipt of a request for a permit the Agency is
required to notify "the State's Attorney and the Chairman
of the County Board of the county in which the facility is
located and each member of the General Assembly from
the legislative district in which that facility is located and
*** the clerk of each municipality any portion of which is
within 3 miles of the facility." (Ill. Rev. Stat. 1977, ch.
111½, par. 1039.) It should be further noted that the
Seventy-Ninth General Assembly rejected the attempt to

amend section 22 to provide:

> "Nothing in this Act is a limit on the power of any unit of local government to pass and enforce zoning ordinances; provided, that no unit of local government is here granted power over any other unit of local government or school district or their contractors, whether within or without the boundaries of such other unit of local government or school district. To the extent that any of such powers are exercised by the Environmental Protection Agency or the Pollution Control Board and a unit of local government, such powers shall be exercised concurrently." Amendment No. 1 to House Bill 3955, 79th Gen. Ass'y.

Nothing in any case decided by this court since the enactment of the Environmental Protection Act lends support to the majority's holding that the control of landfills is a function pertaining to the government and affairs of a local unit of government. On the contrary, in *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, the court specifically held that the city's permit requirement did not extend to a regional ·sewage treatment plant and in *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, we held that an ordinance dealing with noise emission exceeded the home rule powers of that municipality. The majority cites in support of "this court's recognition of local concern over garbage disposal" (75 Ill. 2d at 511-12) the cases of *Montgomery v. City of Galva* (1969), 41 Ill. 2d 562, *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401, and *Consumers Co. v. City of Chicago* (1924), 313 Ill. 408. Although these cases are authority for the proposition that under its police power a city may regulate the collection and disposal of garbage, they do not support the conclusion that the location of a sanitary landfill pertains to the government and affairs of a local unit of government. It should be noted that the only legislation concerning the dumping of garbage ("An Act to prohibit open garbage dumps or sites," approved August 26, 1963 (Ill. Rev. Stat.

1963, ch. 111½, par. 461 *et seq.*), repealed (Ill. Rev. Stat. 1977, ch. 111½, par. 1050)) specifically provided that it did not apply "to the sanitary land fill and incinerator methods or garbage disposal" (Ill. Rev. Stat. 1963, ch. 111½, par. 461).

By some convoluted reasoning the majority concludes that the following language from section 27(a) limits the power of the Board and the designation of sites for landfill. Section 27(a) in pertinent part provides:

"In promulgating regulations under this Act, the Board shall take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality, or receiving body of water, as the case may be, and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution. The generality of this grant of authority shall only be limited by the specifications of particular classes of regulations elsewhere in this Act." Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a).

The majority concludes:

"The power of the Board to set uniform, statewide environmental standards and the power of the County to zone property within its boundaries are therefore evidenced as distinct but concurrent powers that must be exercised co-operatively in the interest of environmental protection. To this end, the County, in zoning land for landfill sites, must adhere to the environmental regulations adopted by the Board, while the Agency, operating under the Board's regulations, must comply with the County's zoning ordinance when issuing permits for landfill sites. Thus, the authority granted the Board under the Act and the home rule authority granted to the County under the Constitution's article VII, section 6, can be exercised in unison to accom-

plish the public policy expressed in article XI, section 1, of the 1970 Constitution." (75 Ill. 2d at 516-17.)

Having expressed this hope for harmony, the majority fails to indicate what course is to be followed when the parties are unable to resolve the confrontation arising from antipodal grants of authority to the Board and the county.

The majority's attempt to distinguish *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, on the basis that the county is a home rule unit cannot withstand scrutiny. *Carlson* did not involve solely the village's zoning power; the ordinance sought to impose a permit requirement which, *inter alia,* included compliance with the village zoning ordinance. The county zoning statute (Ill. Rev. Stat. 1977, ch. 34, par. 3151 *et seq.*) has for many years provided:

> "For the purpose of promoting the public health, safety, morals, comfort and general welfare, \*\*\* the board of supervisors or board of county commissioners \*\*\* shall have the power to regulate and restrict the location and use of buildings, structures and land \*\*\*." (Ill. Rev. Stat. 1977, ch. 34, par. 3151.)

This broad grant of authority obviously confers upon a county the same zoning powers conferred by the Constitution upon a home rule unit. Amendments enacted since the effective date of the Constitution of 1970 have not amended or modified these provisions.

Apposite here is our statement in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 367:

> "[T]o hold here that the city's use of the proposed site as a landfill may be permitted only upon issuance of a conditional use permit by Winnebago County, or that the county, by reason of its zoning ordinance may prohibit such use, contravenes the clearly expressed legislative intent that such operations be conducted only upon

issuance of a permit from the Environmental Protection Agency. By the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for 'a unified state-wide program' and provided the means for issuance of appropriate permits under regulations promulgated after taking into account precisely the conflicting interests shown by this record."

MR. JUSTICE CLARK joins in this dissent.