LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellant, v. THE FIRST NATIONAL BANK OF WAUKEGAN *et al.*, Defendants-Appellees.

Second District   No. 2—86—0289

Opinion filed March 31, 1987.

Joseph T. Morrison and Donald T. Morrison, both of Donald T. Morrison & Associates, of Waukegan, for appellant.

Mark J. Drobnick, of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This is an action in eminent domain. Plaintiff, the Lake County Forest Preserve District, appeals from a trial court order dismissing its petition to condemn certain real estate belonging to defendant landowners. Plaintiff asserts that the trial court order should be over-turned because (1) the defendants' traverse and motion to dismiss were not timely filed, (2) the trial court erroneously admitted certain testimony offered by defendants, (3) the trial court erred in refusing to admit plaintiff's master plan, and (4) the trial court's ruling is contrary to law and the manifest weight of the evidence.

Over a period of approximately 15 years prior to this suit the plaintiff, Lake County Forest Preserve District (the District), had been acquiring land for an urban forest preserve (Greenbelt Forest Preserve). The land, located in the cities of Waukegan and North Chicago, was the subject of numerous condemnation suits. Defendants (the Drobnicks) were parties in over 20 of those suits. By the time the instant suit was being litigated, the District had acquired over 500 acres for the forest preserve and developed it with trails, a lake, and picnic facilities. The land which is the subject of this suit, approximately 3.08 acres, was one of the last parcels to be acquired for the Greenbelt Forest Preserve.

In 1983 the District passed a resolution determining that the Drobnicks' property was necessary for forest preserve and other pur-poses and providing for its acquisition. While the evidence is not alto-gether clear as to what transpired between the District and defend-ants regarding the purchase of the property, it is evident that at least some discussions and/or negotiations ensued. Since the parties were unable to reach agreement, the District filed a condemnation petition in August 1984. The case was set for trial on August 26, 1985. After numerous continuances the parties were given a final continuance to March 10, 1986.

On February 7, 1986, the defendants filed a traverse and motion to dismiss plaintiff's petition to condemn alleging essentially as fol-lows: the property sought by plaintiff was not necessary or desirable for the purposes stated by the District; the District had not made a *bona fide* attempt to agree with defendants on compensation for defendants' land; an excessive amount of real estate was being sought by plaintiff; the land was not a natural forest; the District lacked au-thority to seek condemnation of defendants' property; the District did not have the consent of the city of Waukegan to condemn the prop-erty. The District responded with a motion to strike defendants' pleading, asserting that a traverse is a form of a motion to dismiss

which should be filed at the earliest opportunity. Plaintiff also charged that the defendants' traverse and motion raised new issues and constituted a delaying tactic. The motion to strike was denied.

Hearing on the traverse began on February 25, 1986, and, after three continuances, concluded on March 24, 1986. Numerous documentary exhibits, as well as testimony from witnesses for both parties, were admitted into evidence. The testimony of the witnesses will be set forth as needed for examination and resolution of the issues.

At the conclusion of the hearing the court made the following relevant findings: the subject property is suitable for reforestation and is contiguous to an existing forest preserve; the District had made a *prima facie* case as to the necessity for the land it sought; the landowners had refuted plaintiff's *prima facie* case; the taking of defendants' property was an abuse of discretion, not necessary, and excessive. The court dismissed the petition to condemn and the District filed this appeal.

■■ The District asserts that its motion to strike defendants' traverse and motion to dismiss should have been granted because defendants' motion was not timely filed. Plaintiff analogizes the traverse to a motion for involuntary dismissal under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619) which requires that such motions be filed during the time for pleading. Based on this analogy plaintiff argues that the traverse and motion should have been filed as soon as possible after condemnation proceedings were instituted. It is pointed out that the defendants did not file such pleadings until 18 months after the District filed its petition and then they filed without leave of court. The District also insists that the traverse was filed only after it was evident that the trial court would not grant further trial continuances. Plaintiff concludes that since defendants did not traverse the petition and move for dismissal in a timely manner, those pleadings should have been stricken.

We cannot deny that this case has been protracted. Plaintiff's petition to condemn was filed on August 29, 1984. Defendants did not file their traverse and motion until February 7, 1986. In between those dates the matter was set for an August 26, 1985, trial date but continued to October 15, 1985. According to an order entered on October 8, 1985, the October 15 date was continued to January 21, 1986, and this was to be a final continuance. On January 9, 1986, defendants filed a motion for another continuance to the following May. The court set the matter for trial on March 10, 1986, and again noted that this was a final continuance. Defendants then filed their traverse and motion to dismiss. While we sympathize with the District's frustration

over the numerous and lengthy delays in this case, we do not think the trial court erred in denying plaintiff's motion to strike.

Section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) provides for involuntary dismissal on a variety of grounds which either bar or avoid the legal effect of or defeat a claim. A traverse and motion to dismiss challenge the right of the petitioner to condemn (*Board of Education v. City of Chicago* (1949), 402 Ill. 291, 298, 83 N.E.2d 714) and will result in dismissal where the petitioner cannot show its right to condemn by proper proof. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 517, 170 N.E.2d 569.) While we acknowledge that there appear to be similarities between a section 2—619 motion and a traverse and motion to dismiss, the two are not the same and the limitation on time for filing under section 2—619 does not control the time for filing a traverse.

Plaintiff relies on *Chicago Land Clearance Com. v. Rosenau* (1957), 10 Ill. 2d 501, 140 N.E.2d 695, as authority for the proposition that a traverse and motion to dismiss a condemnation petition must be timely filed and not whenever defendants see fit. In *Rosenau* the petition to condemn was filed on April 2, 1953. In January 1954, after numerous trial continuances, the trial judge directed that all traverses or other pleadings challenging petitioner's right to condemn had to be filed within seven days or the right to file such a pleading would be deemed waived. Defendant's lawyer indicated that he did not intend to file a traverse. Two years after the proceedings had been initiated and more than a year after the trial court's order, defendant changed position and sought to challenge the condemnation. No excuse for the long delay was offered by defendant, and her request for leave to file a traverse was denied. Subsequently, a new trial date was set, defendant was granted a change of venue, still another trial date was set, and in June 1955, defendant again sought leave to file a traverse. During this time defendant changed counsel several times. Nevertheless, her petition for leave to file was again denied. The supreme court upheld this denial on the basis that defendant had failed to comply with the deadline set by the lower court. The court noted that setting a deadline for filing of all traverses and motions to dismiss in a given case enables the trial court to control its calendar and dispose of all traverses which raise the same questions at one hearing rather than trying the same questions over and over again.

Rosenau differs significantly from the instant case in that the trial court there imposed a deadline for filing of challenges to the condemnation petition. The supreme court found the judge's action to be an acceptable exercise of trial court discretion because it promoted

the interests of judicial control and judicial efficiency. The supreme court did not say that all trial courts should be required to put restrictions on condemnation proceedings. In the case at bar there is no indication that the trial judge might have had to try the same questions over and over again due to numerous traverses. It is possible that the lower court did not perceive a need for a deadline on the filing of traverses. Absent a deadline set by the court, we cannot say that it was error to deny plaintiff's motion to strike defendants' traverse and motion to dismiss.

Our conclusion is supported by *City of Chicago v. A. J. Schorsch Realty Co.* (1968), 95 Ill. App. 2d 258, 238 N.E.2d 434, a case cited by defendants. In *Schorsch* the petition to condemn was filed on March 4, 1965, and supplemented the following July. No further action was taken by petitioner until January 1966, when several cases were consolidated. On February 9, 1966, 11½ months after condemnation proceedings were initiated, one defendant filed a traverse and motion to dismiss. Another defendant sought leave to file such a motion on February 10. The trial court struck the traverse and motion which had already been filed and refused to grant leave to file any similar pleadings. On appeal plaintiff relied on *Rosenau* to support its argument that the traverses were properly prohibited. The *Schorsch* court, however, reversed and remanded the case for further proceedings relevant to the traverses. The court distinguished *Rosenau* on its facts and specifically noted that in the case before it no deadline for filing traverses was ever sought or entered.

The facts of the instant case place it somewhere between *Rosenau* and *Schorsch*. They are not so complex or voluminous as those of *Rosenau*. But neither are they as uncluttered and limited as those in *Schorsch*. In our opinion, however, they more closely parallel the facts in *Schorsch*. We find persuasive, as did the *Schorsch* court, the fact that the trial court chose not to impose a deadline for the filing of challenges to plaintiff's right to condemn. We agree with plaintiff that it is important for the trial court to be able to control its calendar and to minimize the retrying of issues. However, the day-to-day decisions about such matters, when not imposed by statute or rule, are within the province of each individual trial judge. We find no error in the discretion exercised here.

Having decided that the traverse and motion to dismiss were properly before the court, we turn now to plaintiff's contention of error in the findings made by the trial court. The only finding unfavorable to plaintiff was that the taking of defendants' land was unnecessary and excessive. Plaintiff argues that this conclusion is contrary to

both law and the manifest weight of the evidence. After reviewing all of the evidence presented at the hearing on the traverse, we have decided that plaintiff is correct.

■■■ A traverse and motion to dismiss challenge plaintiff's right to condemn defendants' property. (*Board of Education v. City of Chicago* (1949), 402 Ill. 291, 298, 83 N.E.2d 714; *City of Benton v. Odom* (1984), 123 Ill. App. 3d 991, 993, 463 N.E.2d 785.) It is settled law in Illinois that when a traverse is filed, the burden is on the plaintiff to make a *prima facie* case of the disputed allegations. (*Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 324, 335 N.E.2d 443; *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 517, 170 N.E.2d 569.) A *prima facie* case for the necessity of a condemnation is made by introducing a resolution or ordinance of the governing body which makes a finding that the condemnation is necessary. (*Village of Deerfield v. Rapka* (1973), 54 Ill. 2d 217, 225, 296 N.E.2d 336; *Trustees of Schools v. First National Bank* (1971), 49 Ill. 2d 408, 414, 274 N.E.2d 56; *Trustees of Schools v. Sherman Heights Corp.* (1960), 20 Ill. 2d 357, 169 N.E.2d 800.) The agency that has been granted the power of eminent domain, rather than the court, has the authority to decide whether the exercise of the power is necessary to achieve an authorized purpose. Absent a clear abuse of this authority, the court will not inquire into the need or propriety of its exercise. (*Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 325, 335 N.E.2d 443; *Department of Public Works & Buildings v. McNeal* (1965), 33 Ill. 2d 248, 251-52, 211 N.E.2d 266.) Accordingly, where plaintiff establishes a *prima facie* case, it becomes the burden of defendant to show that there was an abuse of discretion by the governing board. (*Deerfield Park District v. Progress Development Corp.* (1961), 22 Ill. 2d 132, 139, 141, 174 N.E.2d 850; *Trustees of Schools v. Sherman Heights Corp.* (1960), 20 Ill. 2d 357, 359, 169 N.E.2d 800.) In the instant case the trial court concluded that plaintiff had established a *prima facie* case. The question, then, is whether defendants showed a clear abuse of discretion by the District in exercising its power of eminent domain.

In rebuttal of plaintiff's *prima facie* case for necessity defendants offered testimony from Robert Sabonjian, the major of Waukegan. Sabonjian was asked, in his capacity as mayor, for his opinion as to the need for the taking of the land by the District. He replied:

> "My opinion, there is absolutely no need whatsoever to the Forest Preserve for this property. They have more than adequate open space area, over 500 some odd acres in that immediate area, in fact almost contiguous to this particular property.

This is on a main arterial, contiguous to apartment dwellings, a geriatric center, and a commercial area, as well as a residential area, and we want to maintain some of these lands for our tax base. That is my opinion."

The mayor also indicated that there was a need in Waukegan for apartment dwellings because of a shortage of residential housing and that he would not object if the subject property was developed residentially.

Defendants also called as a witness Mark H. Drobnick, son of Mark Drobnick, the attorney for the defendant trustee and defendant Jerome Drobnick. He testified that the District owned about 13,400 acres in all of Lake County, that the Greenbelt Forest Preserve contains approximately 500 acres, that he had had the opportunity to observe the forest preserve over the past two years and that it was hardly ever used. Joseph Drobnick, a defendant, also testified that some of Greenbelt Forest Preserve was not used. Both Mark and Jerome, however, admitted that the District had developed trails, a lake, and picnic facilities and that they had seen the trails and picnic areas being used.

The trial court indicated that in addition to the testimony recited above it relied on an exhibit introduced by the District. The exhibit is an aerial photo of the existing Greenbelt Forest Preserve and surrounding property. It very graphically portrays the extensive size of the existing forest preserve compared to defendants' three-acre parcel. It also shows that, while defendants' land fronts on a main street and is bounded by buildings on two other sides, the land itself is completely open and adjacent on the fourth side to existing forest preserve land, which is also completely open. The photo further helps to clarify the overall geographical setting of the forest preserve. It is completely bordered on the west by what appears to be a major highway. Although there is considerable adjacent open space, particularly to the south of the preserve, much of the preserve's northern and eastern boundaries are defined by what appears to be fully developed residential areas.

■ We do not believe this evidence adequately refuted the District's *prima facie* case for the necessity of the taking it seeks. While both Mark and Joseph Drobnick indicated that it had been their observation that sections of Greenbelt Forest Preserve were not used, they both were aware of development and use in other areas. Thus, the Drobnicks' testimony is inconclusive as to the use of the forest preserve and does not show clear abuse of discretion by the District.

The aerial photo does not support defendants' position, either.

When considering the photo, the trial court noted that there were already 500 acres of forest preserve adjacent to defendants' property. The court described the subject land as a "spur" of property surrounded on three sides by buildings. We fail to see how the photo shows that the District has no need for the land. That 500 acres have been set aside for a forest preserve does not necessarily mean, in and of itself, that it is inappropriate for the District to seek to add adjacent acreage. Nor is it apparent how the taking was rendered needless merely because the surrounding land has development upon it. Parts of the preserve are located in the cities of Waukegan and North Chicago. It seems clear the preserve is meant to serve an urban, or at least semi-urban, population. In such a situation it does not seem unusual that a forest preserve would be bounded by developed property.

Finally, the testimony of Mayor Sabonjian is not persuasive. His opinion that the District did not need any more land was not supported except for what he apparently perceived to be the city's need to retain the land for future development which might strengthen the city's tax base and ease the city's housing problems. While the mayor's testimony may have spoken to the needs of Waukegan, it did not address the absence of any need for the land by the District. To rely on his testimony is simply to substitute his opinion of what the District needs for what the District itself has determined are its needs for the Greenbelt Forest Preserve.

Defendants have presented little, if anything, other than biased and unfounded opinion testimony that the District does not need the land. Nothing more substantial was offered to demonstrate that there is no necessity for the taking or that it is excessive. Such meager evidence cannot be said to show a clear abuse by the District of its power of eminent domain. Absent such a showing, defendants have not refuted plaintiff's *prima facie* case. (*Trustees of Schools v. Sherman Heights Corp.* (1960), 20 Ill. 2d 357, 169 N.E.2d 800.) The trial court's finding to the contrary is against the manifest weight of the evidence presented to it.

In light of our conclusion that defendants were unable to rebut the District's *prima facie* case for necessity, only brief comment is required to dispose of plaintiff's other contentions. The District claims the trial court erred in admitting the testimony of Mayor Sabonjian. We need not address this issue because, even if the admission of the testimony was error, it was harmless in that it did not prejudice plaintiff. As shown above, defendants were unable to rebut the District's case even when the mayor's testimony was considered. Equally harmless, whether it was error or not, was the trial court's refusal to ad-

mit the District's master plan, which was offered in rebuttal to defendants' case. Since its *prima facie* case was not refuted by defendants, the District's inability to offer rebuttal evidence caused no prejudice.

Lastly, the appellant has filed a motion to strike the brief of the appellees, claiming violations of Supreme Court Rules 341(e)(6) and (7) (87 Ill. 2d Rules 341(e)(6), (7)). The appellees have filed objection thereto. Though there is merit to the appellant's motion, we have chosen to deal with the merits of the case and consequently do not rule on the motion to strike.

The judgment of the circuit court of Lake County is reversed, and this matter is remanded with direction to enter judgment in favor of plaintiff.

Reversed and remanded with direction.

UNVERZAGT and DUNN, JJ., concur.