THE CITY OF WHEATON, Plaintiff-Appellee, v. ROBERT A. SANDBERG *et al.*, Defendants-Appellants.

Second District   No. 2—90—0640

Opinion filed May 3, 1991.—Rehearing denied July 24, 1991.

John E. Waghorne, of Addison, for appellants.

Edward J. Walsh, Jr., of Walsh & Knippen, Chartered, of Wheaton (Brian J. Diamond, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendants, Robert and Karen Sandberg *et al.*, appeal the trial court's denial of the defendants' motion to dismiss and traverse an action by the plaintiffs, the City of Wheaton (City), to condemn their property. The defendants contend the City acted beyond its home-rule authority in adopting the ordinance on which this eminent domain action is based. In addition, defendants claim the enabling ordinance is invalid because it is preempted by State law. Defendants also claim that, even if the ordinance is not preempted by State law, it is unconstitutional as being unreasonable, arbitrary and vague. We hold the City did not exceed its home-rule authority in adopting the ordinance authorizing the City to exercise its power of eminent domain. In addition, we hold the ordinance is not preempted or in any way limited by the State redevelopment law. However, we agree with the defendants

that the ordinance is unconstitutionally vague and unreasonable. Accordingly, the trial court order dismissing the defendants' motion to dismiss and traverse is reversed.

The City of Wheaton is a home-rule municipality. (Ill. Const. 1970, art. VII, §6.) In August 1984, the City of Wheaton passed Ordinance No. E—2023, "AN ORDINANCE PERTAINING TO THE REDEVELOPMENT OF REAL ESTATE WITHIN THE CITY OF WHEATON, ILLINOIS" (enabling ordinance). Sections 1 through 8 of this ordinance, while not specifically amending the city code, are now included therein as chapter 8, article V, sections 8—98 through 8—105. The ordinance enables the City to determine whether a particular area or parcel of land is in need of redevelopment. After such a determination, the City is permitted to designate the area a redevelopment area and acquire that land by gift, purchase or condemnation for the purpose of redevelopment.

In July 1986, the City passed two additional ordinances: No. E—3131, designating the central business district of downtown Wheaton a redevelopment area (redevelopment ordinance), and No. E—3132, authorizing the acquisition of the property located at the northwest corner of Main and Front Streets for the purpose of redevelopment (acquisition ordinance). The property designated for acquisition in the City's redevelopment plan belongs to the defendants, Robert and Karen Sandberg.

The property consists of a two-story building located in the heart of the Wheaton business district. In 1974, the building was substantially destroyed by fire, but was restored and rebuilt early in 1976. The first floor consists of three small commercial units and one large commercial unit. The largest unit is located on the corner of Main and Front Streets. The second floor is divided into nine offices and three residential apartments.

Most of the building has been occupied with regularity since 1976. However, the largest commercial unit, located directly at the corner of Main and Front Streets, has been chronically vacant since that time. The City commenced this action to condemn the four separate retail locations on the first floor, in addition to miscellaneous nonretail space on the second floor. In its acquisition ordinance, the City found that the subject property had been periodically and chronically vacant since 1974 and thus created an adverse aesthetic and economic impact on the central business district.

The defendants filed a motion to dismiss and traverse, alleging among other things that, as a home-rule municipality, the City of Wheaton did not have the authority to institute such an eminent do-

main action. In addition, the defendants claimed the property was in no way blighted or in need of rehabilitation as required for redevelopment. The trial court granted this motion. The City filed a motion to reconsider. Upon reconsideration, the court vacated its order granting the defendants' motion to dismiss and traverse and held the enabling ordinance was a valid exercise of the home-rule powers of the City. The matter was set for hearing.

After a three-day evidentiary hearing on the defendants' motion to dismiss and traverse, the motion was denied. The trial court ruled the City had properly designated certain property in its central business district a redevelopment area. In addition, the court held the subject property qualified as property in need of redevelopment within the meaning of the enabling ordinance as of the date of the filing of the eminent domain action. The defendants filed a motion to reconsider the denial. The motion was denied. The matter proceeded to trial for a determination of just compensation. The jury awarded compensation in the amount of $600,000. The amount of compensation is not contested by the parties on appeal.

On appeal, defendants contend the trial court's denial of the defendants' motion to dismiss and traverse should have been granted because the enabling ordinance (No. E—2023) on which this action is based is invalid because it is preempted by the uniform State standards created by the Commercial Redevelopment and Renewal Areas Act of the Illinois Municipal Code. (Ill. Rev. Stat. 1987, ch. 24, par. 11—74.2—1 *et seq.*) In addition, defendants argue, even if the ordinance is not preempted or limited by State law, it is unconstitutional as unreasonable, arbitrary and vague. We turn now to our discussion of the first issue.

### I. PREEMPTION

The City of Wheaton (City) derives its home-rule powers from the Illinois Constitution of 1970. (Ill. Const. 1970, art. VII, §6.) The constitution permits municipalities to exercise any power and perform any function pertaining to its government and affairs, except as limited by that section. (Ill. Const. 1970, art. VII, §6(a).) Section 6(*l*) provides that home-rule units may perform concurrently with the State any power or function of a home-rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive. (Ill. Const. 1970, art. VII, §6(*l*).) Moreover, the Illinois Constitution of 1970 specifically provides that home-rule powers should be construed liberally. (Ill. Const. 1970, art. VII, §6(m).) Our State courts have con-

sistently recognized these broad powers. See *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495; *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494.

■ In determining whether a municipality's actions are a valid exercise of its home-rule authority, our supreme court has set out a three-part analysis. (*County of Cook v. John Sexton Contractors*, 75 Ill. 2d at 508.) First, the court must decide whether the exercise of power by the municipality is a home-rule power and a power "pertaining to its government and affairs." Second, the court must determine whether the legislature has "specifically" limited the local exercise of the power at issue or whether the legislature has "specifically" declared the State's exercise to be exclusive, thereby totally preempting a home-rule unit's exercise of its constitutional power. Finally, if no specific action has been taken, then the court must determine the proper relationship between the local ordinance and the State law. *County of Cook*, 75 Ill. 2d at 508.

■ We turn now to the first part of the analysis: whether the exercise of eminent domain is a valid home-rule power "pertaining to the local government and affairs" of the City of Wheaton. Our supreme court has held the exercise of eminent domain power by a home-rule municipality to eradicate blight and redevelop its business district is of local concern and, accordingly, a valid exercise of home-rule power. (*City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495.) In that case, the court held a home-rule unit is not proscribed from enacting a home-rule eminent domain ordinance in order to stimulate economic development in its central business district. (*City of Carbondale*, 96 Ill. 2d at 499-500.) The court stated these concerns were sufficiently local in character to "pertain to the local government and affairs" as required by the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6). (*City of Carbondale*, 96 Ill. 2d at 500.) The ordinance at issue in that case was struck down on other grounds. Clearly, in this instance, the City's exercise of eminent domain is a valid home-rule power.

■ We must now determine whether the legislature has specifically limited or preempted this power. A careful examination of the Commercial Renewal and Redevelopment Areas Act (Act) of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11–74.2–1 *et seq.*) reveals no such specific limitations or declarations of exclusive power on the part of the State. Thus, we find the legislature has not limited or preempted the exercise of this power.

Finally, our analysis turns to the proper relationship between the City's ordinance and the provisions of the Act. The Illinois Constitu-

tion provides for the concurrent legislation by the State and a home-rule municipality of any area not limited or preempted by the State. (Ill. Const. 1970, art. VII, §6.) The question facing this court concerns whether the Act, which sets up minimum requirements for a finding of blight, creates a scheme of uniform standards by which even home-rule units must abide. Defendants contend the City's enabling ordinance is invalid because its definition of a "blighted area" differs from the definition of "blight" found in the Act.

■ The purpose of the Act is to enable municipalities to eradicate blight. (Ill. Rev. Stat. 1987, ch. 24, par. 11—74.2—1.) The Act authorizes a municipality to acquire property within the redevelopment plan by eminent domain. However, the term "[c]ommercial redevelopment plan" is defined by the Act as "the comprehensive program for the clearing or rehabilitation and physical development of a commercial blight or conservation area." Ill. Rev. Stat. 1987, ch. 24, par. 11—74.2—2(e).

To qualify for redevelopment under the Act, the area in question must be a "blighted" or "conservation" area as defined in the Act itself. The Act defines a "[c]ommercial blight area" as:

> "[A]ny improved or vacant area of not less in the aggregate than 2 acres located within the territorial limits of a municipality where, if improved, industrial, commercial and residential buildings or improvements, because of a combination of 5 or more of the following factors: age; dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; *excessive vacancies*; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; or excessive land coverage; deleterious land use or layout; depreciation or lack of physical maintenance; lack of community planning, are detrimental to the public safety, health, morals or welfare ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11—74.2—2(b).

The City's ordinance requires only one of the above factors be present in order for an area to qualify as "blighted" under the ordinance. (Before this action was instituted against the defendants, the City amended the ordinance by substituting the words "redevelopment area" for "blighted area.") The City's ordinance also differs from the Act in that it requires only "vacancies in all or part of any building" as one of those factors. In its findings of fact, the City cited the partial vacancy of the subject property as the determinative factor in deciding to condemn the defendants' property.

The question becomes whether the City of Wheaton can condemn property upon the finding of only one of the above-mentioned elements and, in addition, an element that appears in substantially different form in the City ordinance than it does in the Act. The Act specifies that excessive vacancies may be one of the five elements necessary for a finding of blight, while the ordinance merely provides for vacancy alone, in all or any part of the building as sufficient for a finding of blight.

The defendants argue the Act created a uniform set of standards by which the City must abide. In support of this contention, they cite the cases of *County of Cook v. John Sexton Contractors* (75 Ill. 2d 494), and *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484. In those cases, our supreme court concluded that home-rule units may legislate concurrently with the General Assembly on environmental control, but that such legislation must conform with the uniform standards established by the legislature. However, the circumstances surrounding those cases were different from those in the present case.

Those cases deal specifically with the home-rule unit's capacity to legislate in the area of environmental control. The supreme court cited article XI of the Illinois Constitution in support of its conclusion. (*County of Cook*, 75 Ill. 2d at 514-15; *City of Chicago*, 59 Ill. 2d at 489.) That article states that the General Assembly shall provide by law for the implementation and enforcement of the public policy set forth in that section mandating the State to provide and maintain a healthful environment. (Ill. Const. 1970, art. XI, §1.) In *City of Chicago*, the court also reviewed excerpts from the General Government and Local Government Committees of the constitutional convention on the environmental article.

The court concluded that there was no doubt that it was the intention of those committees that the General Assembly must provide the leadership in the fight against environmental pollution. However, in the present case, there is no evidence indicating the necessity for uniform standards under the Commercial Renewal and Redevelopment Areas Act. Nor does this court perceive an overriding policy interest on the part of the State in keeping these standards uniform. Accordingly, the defendants' argument regarding the uniform standards established by the Act must fail.

## II. CONSTITUTIONALITY OF THE ORDINANCE

Although the ordinance is not preempted by the Act, this court

finds it invalid on constitutional grounds. The defendants assert the ordinance is arbitrary, unreasonable and vague on its face. We agree.

An ordinance may be upheld if it bears a rational relationship to a legitimate governmental interest where there is no suspect classification or fundamental interest involved, and there is a presumption in favor of validity of the ordinance. (*Springfield Park District v. Buckley* (1986), 140 Ill. App. 3d 524, 530.) The party challenging it bears the burden of showing that it is unreasonable. *Springfield Park District*, 140 Ill. App. 3d at 530.

Defendants assert that a finding of vacancy, alone, in all or any part of a building, is arbitrary and unreasonable and not rationally related to the end sought to be achieved by the ordinance. The goal of the ordinance, to eradicate blight and renew development in the central business district, is a legitimate governmental interest. However, the language used in the ordinance is so vague and overly broad it renders the ordinance unreasonable.

An ordinance or statute violates due process guarantees when its terms are so incomplete, vague, indefinite and uncertain that men and women of ordinary intelligence must necessarily guess at their meaning and differ as to their application. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1986), 144 Ill. App. 3d 325, *aff'd* (1987), 118 Ill. 2d 389; *Krebs v. Thompson* (1944), 387 Ill. 471.) The law is clear that a legislative act which is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine, with any reasonable degree of certainty, what was intended will be declared void. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389; *Mayhew v. Nelson* (1931), 346 Ill. 381; *People ex rel. Travis v. Rogier* (1927), 326 Ill. 310.

The phrase "vacancies in all or part of any building" is vague and overly broad. Buildings are often vacant either in whole or in part. In fact, many buildings, such as office buildings, hotels, motels and hospitals, are seldom filled to capacity. Under the language of this ordinance, an owner of property, either wholly or partially vacant, cannot be certain whether the property is at risk of condemnation. The ordinance does not specify whether any vacancy is sufficient to justify the condemnation of the property, or whether the vacancy must be excessive, chronic or permanent. Due process requires the terms of the ordinance be clear enough so that every citizen of Wheaton may know how the ordinance will operate to affect their rights when it is utilized. We agree with the defendants that the City's ordinance is impermissibly vague.

■ In addition, the City's requirement that only one of the elements listed need be found in order to justify condemnation of the property is equally unreasonable, arbitrary and overly broad. That section recites the following factors as detrimental to the public safety, health, morals or welfare making it necessary to redevelop the property:

> "[A]ge; dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures, or parts thereof, below minimum City and B.O.C.A. code standards; vacancies in all or part of any building; overcrowding of structures and community facilities; lack of ventilation, light, or sanitary facilities; inadequate utilities; or excessive land coverage; deleterious land use or layout; depreciation or lack of physical maintenance; or any other condition which is detrimental to the public safety, health, morals or welfare ***." Wheaton, Ill., Municipal Code ch. 8, art. V, §8—98(b).

Requiring the presence of only one of the above-mentioned factors in order to justify condemnation is unreasonable, arbitrary and overly broad because it does not put the average person on notice as to exactly when the ordinance will be utilized. By the terms of the ordinance, the City could condemn a building merely because of its age or because of the lack of adequate light or ventilation. Such a requirement cannot withstand constitutional challenge. The ordinance does not bear a rational relationship to the legitimate governmental interest in redeveloping blighted areas. Accordingly, we find the ordinance to be inoperative and invalid.

For the reasons stated above, the judgment entered by the circuit court of Du Page County in favor of the City of Wheaton is reversed.

Reversed.

UNVERZAGT and GEIGER, JJ., concur.