THE VILLAGE OF SKOKIE, Plaintiff-Appellant, v. HARRY P. GIANOULIS
*et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 1—92—0807, 1—92—1247 cons.

Opinion filed March 21, 1994.

Barbara M. Meyer, Corporation Counsel, of Skokie, and Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago (Jeffrey D. Greenspan and David Lincoln Ader, of counsel), for appellant.

Rosenthal, Murphey, Coblentz & Janega, of Chicago (Peter D. Coblentz, of counsel), for appellee Amoco Oil Company.

No brief filed for other appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from a condemnation action brought pursuant to village ordinances and home rule powers and filed by plaintiff Village of Skokie to condemn a gasoline station, three vacant lots and a partially vacant building for redevelopment. The subject property is located on the southeast corner of Dempster Street and McCormick Boulevard in Skokie, Illinois. Defendants Harry and Bessie Gianoulis and Amoco Oil Company filed traverses and motions to dismiss, alleging, *inter alia*, that the taking was excessive, unnecessary and an abuse of discretion. Defendant King David Kosher Bakery was allowed to join in the traverses and motions to dismiss. The circuit court directed a finding, striking the three residentially zoned vacant lots within the subject property from the condemnation petition because they were outside the East Dempster Street Redevelopment (EDSR) area. Plaintiff filed a motion to reconsider that finding, which was denied. Then, after hearing argument on the traverses and motions, the circuit court found in favor of defendants and accordingly granted their traverses and motions to dismiss. Now, plaintiff appeals both the circuit court's order directing a finding in favor of defendants and the order of dismissal.

## THE EAST DEMPSTER STREET REDEVELOPMENT PLAN

In 1984, plaintiff's village manager Robert Eppley submitted the "East Dempster Street Redevelopment Study, June 1984" to the mayor and the village board of trustees. The study was completed by a task force comprised of representatives from plaintiff's planning, engineering, legal, finance, and management departments. The study contained several recommendations regarding the use of vacant land and development of existing uses, engineering design and roadway, parking and aesthetic improvements. On December 17, 1984, after several public hearings, plaintiff adopted ordinance No. 84—12—T—1675 incorporating the findings and recommendations of the task force and establishing and authorizing the East Dempster Street redevelopment in

"the area bounded by Kildare Avenue on the west, the alley, or extension thereof, one-half block north of Dempster Street on the north, McCormick Boulevard on the east and the alley, or extension thereof, one-half block south of Dempster Street on the south."

The EDSR project area consisted of 29 blocks of commercial real estate fronting Dempster Street, including 140 store fronts.

The 1984 ordinance summarized the goals of the EDSR plan as follows: (1) street widening and improvements, (2) off-street parking improvements, (3) landscaping, signage and building facade improvements, (4) economic redevelopment of existing properties which would benefit from upgrading, (5) adoption of the East Dempster Street Sign Regulation Ordinance and (6) elimination of deteriorated vacant structures.

### A. REDEVELOPMENT COMPONENT OF THE EDSR PLAN

Although plaintiff's village board did not pass any ordinance establishing the criteria to be used by the task force in developing the EDSR plan or in designating property for acquisition and redevelopment, the following criteria were used for determining designation of redevelopment parcels: (1) appearance and physical condition of the site; (2) if vacant, time period of vacancy; (3) current negative impact on surrounding property; and (4) potential for redevelopment in terms of size of property and general location. Using the above criteria, the task force determined that plaintiff needed to acquire Herm's Palace at the northeast corner of Dempster and Forest View, Mr. Submarine at the northeast corner of Dempster and Monticello, the former Spicer's Restaurant at the northeast corner of Dempster and Hamin, and Gulliver's Restaurant at the southeast corner of Dempster and Central Park, along with adjacent parcels on the east half of that block. The above-proposed acquisitions

were necessary because Herm's Palace was unattractive, Mr. Submarine exhibited a lack of adequate maintenance and housekeeping, and Gulliver's Restaurant had been damaged by fire and was suffering from lack of maintenance. Plaintiff ultimately acquired the Mr. Submarine and the Gulliver's Restaurant parcels, which were then sold and redeveloped. It did not, however, acquire Herm's Palace or Spicer's Restaurant. Instead, these properties were privately redeveloped.

## B. ROADWAY IMPROVEMENT AND PARKING

The roadway improvement component of the EDSR plan took place in two phases. The first phase, the widening and improvement of Dempster Street from Keystone on the west to Ewing on the east, began in 1985 and resulted in the removal of on-street parking along East Dempster Street. The second phase improved the section of Dempster Street to McCormick Boulevard in 1987 and 1989.

The EDSR plan also called for the acquisition of specific properties for the construction of municipal on-street parking. By February 18, 1986, three parcels of property were acquired for construction of public parking lots. Plaintiff acquired Ches's Restaurant and constructed a parking lot at 3401 Dempster Street. According to the plan, this lot would resolve all off-street parking needs for the commercial uses for the south sides of blocks 28, which is from Trumbull Avenue to Kimball Avenue, and 29, which is from Kimball Avenue to McCormick Boulevard. The subject property is located in block 29.

## C. THE AESTHETIC COMPONENT OF THE EDSR PLAN

In 1986, the aesthetic portion of the EDSR plan was carried out. It included a "facade rebate" program which provided up to a 30% rebate in order to encourage the private sector to upgrade existing facilities. Additionally, it provided rebates for trash areas, parking lot modifications and other property-related items. Although Skokie solicited participation in the program from the private sector, it never solicited any of the defendants.

### COMPLETION OF THE EDSR PLAN

On February 18, 1986, Barbara Meyer, plaintiff's assistant corporation counsel, reported to the village board that all properties for the EDSR plan had been acquired. Thereafter, no further land was acquired for either redevelopment or parking purposes.

On September 12, 1989, village manager Albert J. Rigoni proposed a special taxing district within the EDSR plan to maintain

public area landscaping. This special district included defendant King David Kosher Bakery's and defendant Amoco's parcels which front Dempster Street, but did not include the three residentially zoned vacant lots fronting onto McCormick Boulevard. In a memorandum concerning the above proposal, Rigoni wrote that

"[t]he [EDSR] program has been successful beyond our best expectations. All blighted parcels have been eliminated, most parking problems have been abated. Roadway flow and safety have been substantially upgraded and numerous property owners have improved their properties with the help of Village grants.

\* \* \*

Underscoring the success of the project, substantial private dollar redevelopment is now taking place on the new and improved East Dempster Street."

Contrary to the above memorandum, at the evidentiary hearing in this case, Rigoni denied that all blighted parcels had been eliminated in the EDSR plan area by September 12, 1989. In addition, he further testified that there was an open time frame for the acquisition of property.

## THE SUBJECT PROPERTY

The subject property includes an Amoco service station at the corner of Dempster Street and McCormick Boulevard, the King David Kosher Bakery building immediately west of the Amoco station, and three residentially zoned vacant lots south of the Amoco station which front onto McCormick Boulevard. The subject property was not designated as a redevelopment parcel in the EDSR plan, even though the bakery building and the Amoco parcel lie within the plan area.

The Gianoulises have owned the subject property since the 1950s. The King David Kosher Bakery building was constructed in 1959. There are three store fronts in that building, two of which are leased and occupied by the bakery. The lease for the third store front ended in May 1988, allegedly because of road construction which was taking place on Dempster Street and McCormick Boulevard.

## DEVELOPMENT INTEREST IN THE SUBJECT PROPERTY

On April 15, 1988, Amoco entered into a new 10-year lease with the Gianoulises for the service station property. Amoco had appropriated $367,242 to renovate the site and had applied to plaintiff for the required special use permit. When filing the application for the use permit, Amoco's attorney was informed that plaintiff was interested in purchasing or condemning the property

and was then asked whether he still wanted to file the application. Amoco filed the application along with a site improvement plan. Plaintiff's planning staff, including Peter Peyer, and the village plan commission recommended approval of Amoco's special use application to renovate the station and establish a self-service station with a food shop. Nevertheless, the village board later denied the application.

The Gianoulises had received 20 to 30 purchase inquiries for the subject property in the previous five years, but were not interested in selling. One of the inquiries, specifying the Amoco parcel, came in late January 1988 from John Sheldon, chairman of the board of Evanston Bank. Even after Sheldon was informed that the Gianoulises did not want to sell, he continued to send letters on February 18, April 12 and May 2, 1988, relaying the bank's serious interest in acquiring the Amoco parcel. Additionally, Sheldon made several telephone calls directly to the Gianoulises in order to convince them to sell.

After failing at his attempts to persuade the Gianoulises to sell, Sheldon contacted Rigoni and inquired whether plaintiff would be interested in having a bank on the Amoco parcel. Rigoni responded positively and had several subsequent telephone conferences with Sheldon. During one of those conferences, Sheldon opined that the Gianoulises had an inflated notion of the value of the Amoco parcel. According to Rigoni, Sheldon sought a commitment from plaintiff to condemn the Amoco parcel and sell it to the bank for redevelopment purposes. Other people had also expressed an interest in purchasing the parcel if plaintiff ever acquired it.

In October 1988, Rigoni publicly stated that plaintiff did not believe a gas station was needed on the Amoco parcel and that it wished the parcel to be redeveloped with a better use. In December 1988, Rigoni publicly reiterated that plaintiff did not want a gas station to reopen on the Amoco parcel. Both the October and December statements were reported in the local newspaper.

The minutes of a closed meeting held on December 19, 1988, which was attended by Rigoni, indicate that village trustee McCabe was displeased with the prospect of a self-service gasoline station on the Amoco parcel because the site is a prominent entry point to Skokie. In McCabe's opinion, the facts that the station was proposed to be self-service and operated by Amoco were deterrents to its acceptability. Trustee Van Duesen agreed with McCabe and further stated that a banking facility would be desirable. On February 7, 1989, plaintiff's village board passed the ordinance condemning the subject property.

## PLAINTIFF'S EXPERT OPINIONS

George Foscardo, the author of the EDSR plan, testified for plaintiff as a planning expert. He had left Skokie in December 1986 and returned on June 20, 1990, to inspect the EDSR plan area. He opined that taking the subject property was consistent with the plan and that acquiring it for redevelopment was necessary. Foscardo based his opinion on the fact that the subject property met the criteria in the plan for acquisition of property for redevelopment. He testified that lot 1 of the subject property, consisting of the Amoco station, King David Kosher Bakery and a vacant store front (1) had more than one use, namely, a bakery and a gasoline station, (2) had inadequate parking, (3) had existing parking which was hazardous because cars parked at the bakery had to back onto Dempster, (4) had a portion of the property vacant, and (5) that the site was dilapidated because it lacked appropriate parking, landscaping, paving and lighting. Moreover, Foscardo opined that the property was of a size that would allow for assemblage and redevelopment. He additionally stated that since lots 37, 38 and 39 remained vacant, redevelopment was necessary.

Foscardo admitted that when he left Skokie, the Amoco station had been active and that he was unaware of the reasons for it discontinuing operations. He did agree that the reasons for a parcel being vacant are significant in determining the need for municipal acquisition and redevelopment. He acknowledged that a property owner or tenant would have a good business reason for closing if the site was adversely affected by public road construction. Additionally, Foscardo agreed that the submitted private plan to redevelop the property indicates the subject property would not be vacant. Lastly, he admitted that no specific study was done, including the EDSR study, of the subject property in 1984 to determine if it had any negative impact on surrounding properties and that there were no goals or objectives in the EDSR plan for the subject property.

Next, Peter Peyer, plaintiff's planning supervisor, testified that he did not participate in any decision making by the task force in formulating the EDSR plan. By the time Peyer took over Foscardo's duties in December 1986, all of the redevelopment parcels designated in the plan had been acquired. Peyer opined that taking the subject property for redevelopment was consistent with the plan and that it was necessary for plaintiff to acquire the property for redevelopment. Peyer cited the same reasons for the basis of his above opinion as Foscardo did and added that the subject property was deficient in stormwater detention, signage, maintenance of its awning and its lack of a permanent trash enclosure with a drain.

On cross-examination, Peyer admitted that he originally recom-

mended approval of Amoco's special use permit. Furthermore, Peyer admitted that there is nothing in the plan indicating that the commercial area should include the three residentially zoned vacant lots and that until about February 1990, when an exhibit for this condemnation petition was prepared, no map at the village showed the subject property as an EDSR project to be completed. Lastly, Peyer conceded that the deficiencies of the subject property could be cured by means other than condemnation.

Frederick Schattner, plaintiff's traffic engineer, was the last to testify on plaintiff's behalf. He testified that the parking spaces in front of the bakery which back onto Dempster Street were to be eliminated by the McCormick Boulevard road improvement project, but were not. He stated that the bakery parking spaces were the only remaining spaces which still required customers to back onto Dempster Street. He admitted that plaintiff never requested that the complained-of spaces be eliminated until it filed its condemnation petition. The petition stated that the subject property had deficient parking, even though the EDSR plan states that the parking lot at 3401 Dempster Street, one block west of the subject property, was designed and intended to meet the deficiencies in off-street parking for all uses within blocks 28 and 29, of which the subject property is a part. To counter this, Schattner stated that the parking lot is over 300 feet away from the bakery and, therefore, would not realistically serve the subject property.

## DEFENDANTS' EXPERT TESTIMONY

Rolf C. Campbell, a professional land planner, testified on behalf of defendants that the highest and best use of the subject property would be for commercial purposes, including the three residentially zoned lots. Campbell testified that if an area is healthy, it is not necessary for the public to acquire an individual property to allow it to redevelop. Public acquisition is only necessary where one property desires to redevelop, but cannot because adjacent properties are dilapidated and the owner desiring to develop does not have the ability to assemble those dilapidated properties or bring them into conformity. Campbell opined that the Dempster Street corridor is healthy, and, therefore, it is unnecessary for plaintiff to acquire the subject property.

Campbell also testified that Amoco's special use application is indicia that the site would develop privately and that there were private funds available for development, thereby negating the need to spend public monies to redevelop the property. Further, Campbell testified that the reason the Amoco station discontinued operating was because of the McCormick Boulevard road improvement project.

## PROCEDURAL HISTORY

On February 7, 1989, plaintiff adopted ordinance No. 89—2—V—2007 to condemn the subject property for redevelopment as part of the EDSR project. Plaintiff filed its petition to condemn the subject property on May 19, 1989. On June 21, 1989, Amoco, a lessee of a parcel of the subject property, filed its traverse and motion to dismiss. Defendants Gianoulises, owners of the subject property, also filed a traverse. King David Kosher Bakery Company, a tenant of a building on the subject property, joined in the traverses and motion to dismiss. An evidentiary hearing was held. At the close of plaintiff's evidence, defendants moved for and the circuit court granted a directed finding striking the three vacant residentially zoned lots from the condemnation petition as being outside the EDSR area. Then, after all the evidence was presented, the circuit court granted defendants' motion to dismiss. Now, plaintiff appeals both the order directing a finding in favor of defendants and the order granting defendants' motion to dismiss.

## OPINION

■ It is well established in Illinois that laws conferring the authority to take private property by exercising the power of eminent domain must be strictly construed (*Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 335 N.E.2d 443; *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 427 N.E.2d 70) in order to protect land owners' property rights (*Village of Long Grove v. First National Bank* (1987), 164 Ill. App. 3d 253, 517 N.E.2d 729). A statutory grant of eminent domain power can only be exercised in the manner authorized by statute. (*Department of Public Works & Buildings v. Ells* (1962), 23 Ill. 2d 619, 179 N.E.2d 679.) To pass constitutional scrutiny, the statute must also contain definite standards for municipal authorities to apply. Thus, the language of the statute or ordinance may not be so incomplete, vague, indefinite or uncertain that a property owner could not be certain whether property is at risk of being condemned. (*City of Wheaton v. Sandberg* (1991), 215 Ill. App. 3d 220, 574 N.E.2d 697.) The standard for reviewing the circuit court's order of directed finding and order of dismissal is whether they are against the manifest weight of the evidence presented. *Lake County Forest Preserve District v. First National Bank* (1987), 154 Ill. App. 3d 45, 506 N.E.2d 424.

Plaintiff's first argument on appeal is that in directing a finding in favor of defendants, the circuit court impermissibly used "construction" to avoid and alter the result intended by plaintiff's use of its home rule powers in enacting ordinance No. 89—2—V—

2007, and thereby the circuit court transgressed constitutional limits. We disagree and affirm the circuit court's order of directed finding.

The subject property was being condemned for "redevelopment" pursuant to plaintiff's home rule ordinance and section 11—61—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—61—1 (now 65 ILCS 5/11—61—1 (West 1992))), which authorizes condemnation for municipal purposes. Section 11—61—1 of the above statute does not set forth standards for "redevelopment" as a municipal purpose. Thus, plaintiff in its EDSR study established its own standards and goals and created the EDSR project area which formed the basis of the 1984 home rule ordinance.

In the instant case, plaintiff's authority to take the three residentially zoned lots was challenged because the lots were never included in the EDSR study and, thus, were likewise not included in the 1984 ordinance. Rigoni admitted that only after he was contacted by a representative of Evanston Bank, which was unsuccessful at privately purchasing the subject property from the Gianoulises, did plaintiff become interested in condemning the lots for redevelopment. In an attempt to include the three lots as within plaintiff's taking authority derived from the 1984 ordinance plaintiff enacted ordinance No. 89—2—V—2007, wherein it declared that the three lots were "located within the East Dempster Street Redevelopment Project Area" and that such property "shall be acquired for redevelopment and other municipal purposes." However, it is irrelevant that the 1989 ordinance attempts to "re-describe" the boundaries of the project area. Since the Illinois revised statute does not include "redevelopment" as a purpose for taking, plaintiff must rely on its own home rule ordinance in order to derive the power to take property for redevelopment. It is the 1984 home rule ordinance that defines the public purpose and necessity for proceeding according to the EDSR plan, and therefore, the 1984 ordinance, not the 1989 ordinance, is the instrument from which plaintiff derives its authority to take.

■ Strict construction applies to the underlying authority for a taking ordinance, and a court should consider the reasons for the law, the evil to be remedied, and the objects and purposes to be obtained. (*Forest Preserve District v. Estes* (1991), 222 Ill. App. 3d 167, 583 N.E.2d 640.) Since the three residentially zoned lots were outside the EDSR project area and were not part of the EDSR study, its goals, recommendations or findings which formed the foundation of the 1984 ordinance, and since that ordinance is the instrument from which plaintiff derives it authority for taking, we hold that the circuit court properly found those lots to be outside of plaintiff's eminent domain authority and properly struck them from the condemnation petition.

After the directed finding in favor of defendants was entered, plaintiff passed ordinance No. 90—10—V—2186, amending the EDSR area to include those three residentially zoned lots, and then filed a motion for reconsideration of the directed finding. The circuit court also denied that motion. Now, plaintiff argues that by virtue of the 1990 ordinance, the circuit court's order of directed finding should be reversed. We disagree. The 1990 ordinance is meaningless because plaintiff cannot sidestep the requirement of a finding of necessity. The 1990 ordinance is a self-serving recitation of necessity. (See *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 427 N.E.2d 70.) The facts remain that the lots were never part of the findings, recommendations or goals of the EDSR and were not part of the area which was studied when the enabling ordinance was passed in 1984. Plaintiff cannot merely pass an ordinance and state therein that the lots are now included in the study and the plan. We, therefore, find that the circuit court properly denied the motion for reconsideration.

■ Plaintiff also argues that defendants waived the issue on which the directed finding was granted because they failed to raise the objection regarding the residentially zoned lots prior to the close of plaintiff's evidence at the hearing. A traverse and motion to dismiss challenge plaintiff's right to condemn the defendant's property. (See *Lake County Forest Preserve District v. First National Bank* (1987), 154 Ill. App. 3d 45, 506 N.E.2d 424.) It is the settled law of Illinois that where a defendant in a condemnation suit contests the petitioner's right to condemn by filing a traverse, the traverse acts as an inquiry into the necessity for the taking and the burden is upon the petitioner to maintain its right to condemn by proper proof. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569.) Thus, by filing the traverse and motion to dismiss, defendants did dispute petitioner's right to condemn the lots in question and, in fact, specifically disputed the necessity of condemning them. Accordingly, we find that defendants did not waive the issue for appeal.

■ Plaintiff's second contention on appeal is that the circuit court exceeded its constitutional role when it ruled that plaintiff's finding of necessity to take the lot occupied by the Amoco station and the King David Kosher Bakery building was an abuse of discretion. When a traverse is filed, the burden is on the plaintiff to make a *prima facie* case of the disputed allegations. Such a case can be made by introducing an ordinance of a governing body which has made a finding that the condemnation is necessary. Thus, where a *prima facie* case has been established, it becomes the burden of the defendant to show that there was an abuse of discretion by the governing

body. (*Lake County Forest Preserve District*, 154 Ill. App. 3d 45, 506 N.E.2d 424.) In the instant case, the circuit court held that plaintiff made a *prima facie* case and, therefore, the burden did shift.

Citing *Berman v. Parker* (1954), 348 U.S. 26, 99 L. Ed. 27, 75 S. Ct. 98, plaintiff correctly states that once the question of public purpose has been decided, the amount and character of the land to be taken and the need of that land to complete a project rests in the discretion of the legislative branch. Thus, the question for the circuit court is whether the "legislative branch" abused its discretion by acting arbitrarily in its attempt to condemn the subject property. (*State of Illinois Medical Center Comm'n v. United Church of the Medical Center* (1986), 142 Ill. App. 3d 498, 491 N.E.2d 1327.) Absent evidence of fraud or a clear abuse of power, courts generally do not inquire into the interest, bias or motives of a municipal body acting in a legislative capacity. *Village of Wheeling v. Exchange National Bank* (1991), 213 Ill. App. 3d 325, 572 N.E.2d 966.

The instant case is one in which a municipal body acting in a legislative capacity clearly abused its power. Plaintiff, in its brief, cites many problems that allegedly plague the subject property which the EDSR plan proposes to remedy. Defendants have attempted to correct these problems and have even submitted a plan for renovation. This very plan was originally recommended for approval, then rejected by persons and governmental bodies now attempting to condemn the property. A review of the record indicates that the above entities have deliberately denied defendants the means to correct the problems which are being used as evidence in favor of condemnation. We, therefore, uphold the circuit court's finding that the condemnation was a clear abuse of power. See *City of Wheaton v. Sandberg* (1991), 215 Ill. App. 3d 220, 574 N.E.2d 697.

■ Plaintiff's third argument is that Amoco's plan to renovate its station should not have been admissible because Amoco's special use application was denied on the basis of zoning restrictions and violations and, that therefore, the above evidence is a collateral attack on plaintiff's zoning law. Amoco's special use application was admissible to show that plaintiff clearly abused its power. The record on appeal indicates that the area in question was healthy and that there was a strong level of private development and investment in it, thereby negating the need of using eminent domain. The above evidence also served to impeach testimony that there was necessity to take the property in question in order to revitalize it. The application indicates that Amoco had a substantial sum of money available to renovate its station. Further, Peyer initially recommended approval of the application, finding it acceptable under the existing circum-

stances at that time. We hold that the circuit court properly allowed the admission of Amoco's special use application into evidence as it was relevant and not a collateral attack on plaintiff's zoning ordinance.

■ Finally, plaintiff contends that the circuit court erred in admitting evidence of out-of-court statements made by village trustees McCabe and Van Duesen. The general rule that the motives behind the prompting of a taking are not properly the subject of judicial investigation is inapplicable when there is a presence of a clear abuse of power. (*City of Chicago v. R. Zwick Co.* (1963), 27 Ill. 2d 128, 188 N.E.2d 489.) Since we found that plaintiff clearly abused its power, the complained-of statements were admissible to show the motives for attempting the taking.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and MANNING, J., concur.